## SOUTHERN RY. CO. v. SMITH.

(Circuit Court of Appeals, Fifth Circuit.   March 29, 1898.)

No. 622.

1. CARRIERS—PASSENGERS—EXTRAORDINARY CARE.
  One who is crossing the track, with a railroad ticket in his pocket, to board a train, but has not been to the depot, and has not notified the officers or agents of the company that he is a prospective passenger, is not a person to whom the company owes extraordinary care and diligence as a passenger.

2. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.
  In Georgia it is error to refuse to charge that if, by the exercise of ordinary care, plaintiff could have avoided the consequence caused by defendant's negligence, he cannot recover.

3. SAME—INSTRUCTIONS TO JURY.
  Where a train was in sight 200 yards away, and all other witnesses saw it approaching, and most of them heard the bell, and the plaintiff would have been obliged to see it if he had looked, his testimony that he did look, and did not see it, should be taken as untrue, and a verdict directed for defendant.
  McCormick, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Georgia.

The following statement of the case, made by plaintiff in error, is full, and covers all of the important allegations in the pleadings and testimony:

"On April 14, 1896, Perry C. Smith filed his suit against the Southern Railway Company in the United States circuit court for the Southern district of Georgia, Western division, alleging that on September 16, 1895, plaintiff was in Eastman, Ga., and intended to take the 2:30 p. m. south-bound train; that he left the business part of the town in ample time to board his train, which was then standing on the side track on the east side of the railroad; that he had to approach the railroad at a public street and crossing, and walk up the railroad until he reached his train, this being the way provided by defendant for passengers to board its trains; that when he reached the crossing, out of abundant caution, he looked down the track, but could see no train approaching; that he had no reason to expect any train, because the north-bound had been meeting the south-bound train several miles below Eastman; that he then walked up the railroad track, as was necessary, to board the train; that, while walking within two or three feet of the main line, the north-bound train approached from his rear, at a high rate of speed, and the engine struck him in the back; that it was the company's duty to provide a safe place of ingress and egress for passengers to and from trains; that plaintiff was rightfully at the place of injury, having a ticket, and was in the way provided by the defendant company; that the train approached without blowing the station signal, and at a speed of twenty miles per hour; that the standing train was ringing its bell preparatory to starting, so that, if the approaching train was ringing its bell, plaintiff could not hear it on account of the confusion made by the noise of the standing train; that the approaching train gave no signal, as far as the plaintiff could hear; that he was on the track in the daytime, in plain open view of those on the approaching engine, and they gave him no signal by blowing the whistle or calling out to him; that it was the company's duty to run the train at such speed as not to endanger life, and so as to stop at the crossing where plaintiff was injured; that, in violation of law and duty, the train was running twenty miles per hour when the crossing was reached, and when plaintiff was struck; that the accident occurred in the corporate limits, near the center of the town; that the company was negligent in running at such speed in violation of an ordinance. Plaintiff sets out in detail the alleged nature and extent of his injuries, alleges they were permanent, and disabled him from pursuing his vocation as traveling salesman, and from procuring other profitable employment, says

he was without fault, and sues for $5,000 damages. including punitive damages. The defendant company filed a demurrer which is in the record. Defendant also filed a plea denying all the material allegations, and especially denying every allegation of fault or negligence on the part of the defendant company or its employés, or freedom from fault on the part of the plaintiff, and denying any liability to plaintiff, and averring that the accident and injury to him, whatever it might be, was due entirely to his own fault, negligence, and carelessness; and it could easily have been avoided by him by the exercise of ordinary care and prudence on his part. The trial began May 10th, and was concluded May 13, 1897. The testimony at the trial showed that plaintiff below was in the town of Eastman, Ga., on the date specified, and was making his way to a train on a siding near the depot, for the purpose of boarding the same; that he had a mileage ticket in his pocket. In order to reach it, he was compelled to cross the main line, and in doing so was hit by the bumper on the front of the engine, and injured. It was further established that the train that caused the accident could be seen for from two hundred to five hundred yards before it reached the station, and it ran not more than three car lengths after it hit the plaintiff below. It is the uncontradicted testimony of all parties that the plaintiff was walking beside the track, and within a few feet of it, before turning to cross just in front of the incoming train. It was established that the whistle of the north-bound train was blown once as it came out of the cut about a quarter of a mile south of the depot, and some more short blasts were sounded before it reached the lower south switch, all of which could have been distinctly heard at the depot. The bell began to ring before the train reached the lower south switch, and rang continuously until the train finally stopped opposite the depot. The train stopped at the regular place opposite the depot. As Smith started to step onto the track, the fireman called out to him to 'Look out!' but he paid no heed to the warning, and was injured. Smith testified that when he reached the south side of Fourth avenue, near the western side track, he turned, and looked south, and saw no train coming, and that when he got between the side track and the main line, and had walked a few steps north, he again looked south, and saw no train coming. All the witnesses for plaintiff and defendant saw the train coming, and some of them as far as a quarter of a mile away, and all but one or two heard its bell ringing, and several heard the fireman call out to Smith as he started to step on the main line in front of the approaching train. No one testifies as to seeing Smith look for the train. There is no conflict in the evidence that there was nothing to prevent Smith from seeing the train. At the close of all the evidence, defendant's counsel moved the court to direct and instruct the jury to render a verdict in favor of the defendant, because the evidence demanded such a verdict, and no other verdict could properly be rendered under the evidence and under the law applicable in said case. The court, however, refused the motion to direct a verdict, and also refused to give in charge to the jury certain requests made by defendant's counsel; and, after receiving the instructions of the court, the jury retired to their room, and entered upon their deliberations, and a verdict was returned in favor of plaintiff for $2,790.00, and a judgment was entered accordingly."

John F. Delacy and James Bishop, Jr., for plaintiff in error.

A. O. Bacon, A. L. Miller, and Wm. Brunson, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

SWAYNE, District Judge. The case comes to this court upon writ of error containing 21 separate specifications founded upon 15 special requests by defendant to charge, which the court refused, and upon exceptions to the charge as given by the court. The first error we would notice upon the record is that in which the court treated the plaintiff below as a passenger, and charged the jury that the defendant below owed him extraordinary care and diligence as such passenger. We think plaintiff below was not a passenger in the contemplation of

law.    He was not upon the train, had not been to the depot recently, nor purchased a ticket, and did nothing to notify any of the officers or agents of the defendant company that he was even a prospective passenger.    The company did not owe him extraordinary care or diligence as such passenger, but only ordinary care as to the general public.

We think the court erred in charging the jury as recited in the eighteenth specification of error, in which it assumed to be a fact that the train was running at 8 or 10 miles per hour, when it injured the plaintiff below, and further suggested to the jury that it usually ran into the station among the passengers at that rate of speed.

We think the requests contained in twelfth and thirteenth assignments of error, that there was no allegation or proof to justify or uphold a verdict for punitive damages, were erroneously refused, and that this was error.

Another question arising out of many of the assignments of error, and embodied in many of the special requests to charge by defendant below, is the question whether the injury to plaintiff below was caused by his negligence; that if, by the exercise of ordinary care, the plaintiff could have avoided the consequence caused by defendant's negligence, if defendant was negligent, then he could not recover. This request to charge the law long established both by the statutes and decisions of the state of Georgia as well as the decisions of courts generally was repeatedly requested by the defendant below, and was as repeatedly refused by the court.    This doctrine is so well established, and is of such long standing, and upon which the courts of the country are so unanimous, that we should not stop to make any citations to sustain it if it was not so pointedly questioned by the record. First, section 3830 (2972) of the Code of Georgia reads as follows:

"If the plaintiff by ordinary care could have avoided the consequence to himself caused by the defendant's negligence, he is not entitled to recover; but in other cases the defendant is not relieved although the plaintiff may in some way have contributed to the injuries sustained."

In such cases the doctrine of contributory negligence does not apply.    In Railroad v. Bloomingdale, 74 Ga. 604, Branham, J., indorses this doctrine; and, after quoting from several Georgia as well as noted English decisions to sustain it, adds:

"These cases were followed and made the basis of the opinion of this court in Branan v. May, 17 Ga. 136, and doubtless that case, as well as its citations, were duly considered by our codifiers in drafting sections 2972 and 3034 of the Code."

In Blitch v. Railroad, 76 Ga. 335, Blandford, J., indorses the above doctrine, and adds:

"So it appears that the plaintiff, in trying to make out his case, made out a full and perfect defense for the defendant, rebutting all assumption of negligence against it."

See, also, Railroad v. Harris, Id. 508, by Jackson, C. J.

In Enright v. City of Atlanta, 78 Ga. 297, Jackson, C. J., correctly states the law as follows:

"Our view of the law is that, to prevent recovery, he must have been not only lacking in ordinary care and diligence to prevent injury, but that by that ordinary care and diligence, had he used them, he would have avoided the injury."

In Smith v. Railroad (a case in which the facts are similar in many respects to those at bar, except it was established that the company was negligent) 82 Ga. 804, 10 S. E. 112, Bleckley, C. J., announces the law of Georgia and the construction of section 2972 of the Code as follows:

"It is beyond dispute that the railroad company was negligent. It failed to give the signals, to check the train at public crossings, and was running at a speed altogether too high. Enough, and more than enough, appears to fix liability upon the company if only its negligence were involved. But the evidence makes the plaintiff's negligence quite as apparent as that of the company. Not only so, but it shows in the fullest and clearest light that by the use of ordinary care he could have avoided the consequence to himself of the company's negligence; and, that being so, the Code (section 2972) declares in express terms that he is not entitled to recover. This rule of law it is that bars him, and renders recovery impossible. It is idle to try to evade the rule by dwelling upon the negligence of the company, for, unless there is negligence of the company which would otherwise render it liable, the rule we are considering would have no place in the law. It is only where there is negligence the consequences of which are to be shunned that the plaintiff is charged with the duty of shunning them if he can do so by the exercise of ordinary care. His failure in this respect does not stop with reducing the amount of his damages, but defeats a recovery altogether. Railroad v. Bloomingdale, 74 Ga. 604, and cases cited on the able opinion of Brannon, J. Nor is this mere Georgia law dependent on a local statute, but the principle prevails elsewhere."

This rule applies to a passenger as well as to the general public at railroad crossings. See McLarin v. Railroad Co., 85 Ga. 504, 11 S. E. 840. See, also, Ashworth v. Railway Co., 97 Ga. 307, 23 S. E. 86. The above doctrine is fully supported by Markham v. Railroad Co. (N. C.) 25 S. E. 786, and by Berkeley v. Railway Co. (W. Va.) 26 S. E. 349, and in Railroad Co. v. Houston, 95 U. S. 697, in which Mr. Justice Field, after commenting upon the charge of the court below as misleading and upon facts not before it, indorses the above doctrine in the following language:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequence of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequence of failure. Upon the facts disclosed by the undisputed evidence in the case, we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation. Under these circumstances, the court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant."

See, also, Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125.

The only remaining error we have to notice is that raised by the first assignment of the request of defendant's counsel at the conclusion of all the evidence to direct and instruct a verdict in favor of the

defendant on the grounds that the evidence demanded such a verdict, and that no other verdict could properly be rendered under the evidence and under the law applicable in this case. There can be no doubt of the right and duty of the court to do so when the evidence introduced shows that by the exercise of ordinary care he might have avoided the injury. It is the undisputed testimony in the case that the approaching train could be seen from 200 yards to a quarter of a mile before it reached the point where the accident occurred. It was daytime, and the plaintiff below was in possession of sight and hearing. All other witnesses saw it approaching, and most of them heard the bell. It is true that when plaintiff below was asked by counsel to state in his own way the circumstances of the injury, in his answer thereto he states no less than four times in the first paragraph that he looked for the train; but this was not and cannot be true. It never should have been submitted to the jury, and it is too much to ask this court to affirm a judgment upon a statement so evidently false. The train was in sight, and he either did not look, or, if he did, he saw it; he would be obliged to see it. When there is any question to leave to the jury, they should determine it; but when the testimony of a witness is so absolutely incredible as to be impossible of belief, the court should so determine. This was done in Ashworth v. Railway Co., 97 Ga. 307, 23 S. E. 86, and in Payne v. Railroad Co. (Mo. Sup.) 38 S. W. 308, and was approved by Thayer, J., in Railway Co. v. Pounds, 27 C. C. A. 112, 82 Fed. 217. The comments of the court in the Payne Case seem so appropriate to the facts of this case that we conclude the opinion by an extract therefrom:

"But in this instance it is plainly proved beyond peradventure that this statement of plaintiff 'that he did all in his power to ascertain whether there were any trains approaching,' etc., was not, and, indeed, could not be, true. This matter of denying probative force even to direct and affirmative testimony, when such testimony is plainly at war with the physical facts and surroundings, has passed into precedent. Thus, in the leading case of Artz v. Railroad Co., 34 Iowa, 153, it is said: 'But it is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the question is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be true. It constitutes, therefore, no conflict. Suppose the fact is conceded that the sun was shining bright and clear at a specified time, and a witness having good eyes should testify that at the time, he looked, and did not see it shine, could this testimony be true? The witness may have been told that it was necessary to prove in this case that he did look, and did not see the sun shine; he may have thought of it with a desire that it should have been so; he may have made himself first believe it was so; and this belief may have ripened into a conviction of its verity; and possibly he even may testify to it in the self-consciousness of integrity. But, after all, in the very nature of things, it cannot be true, and hence cannot, in the law, form a basis for a conflict upon which to rest a verdict. A man may possibly think he sees an object which has no existence in fact, but which it may be difficult, if not impossible, to prove did not exist, or was not seen. But an object and power of sight being conceded, the one may not negative the other. In this case the plaintiff had good eyes. The train was approaching him in the night, with the engine's headlight burning brightly. If the plaintiff looked, he must have seen it, or he must have looked very negligently and carelessly. In either case, he was necessarily, in the eyes of the law, guilty of contributory negligence precluding his right to recover.'"

The judgment is reversed, and the cause remanded, with instructions to the court below to award a new trial.

McCORMICK, Circuit Judge (dissenting). I cannot concur with my brethren in the decision of this case. I do not draw from the testimony the same conclusions that they announce. I think there was a substantial conflict in the testimony as to the rate of speed of the incoming train, and as to the distance to the point at which the train came into plain view, and that these matters are not so well established by the proof as requires or permits the court to find as matter of law that the testimony of the defendant in error to the effect that he did look, and did not see the train, "is not and cannot be true." And, in my judgment, the state of the proof in the case requires that it should be submitted to the jury. I say nothing about the manner in which it was submitted to the jury, because this court, as I understand it, reverses the case on the ground that it should have been withdrawn from the jury, holding that the proof conclusively shows that want of care upon the part of the defendant in error, which would bar him from recovery, without regard to the negligence of the plaintiff in error. My understanding of the proof is that it shows that the defendant in error had placed his baggage on the outgoing train, upon which he intended to take passage, and, as that train was stopped for dinner, he stepped across the way, to some business house, while his train was waiting, and he was returning to his train at the time he received the injury. I do not understand the force of the suggestion that he had not been to the depot, nor purchased a ticket, nor notified any of the officers or agents of the defendant company that he was even a prospective passenger. He had a ticket. Therefore he did not need to purchase another. He put his baggage upon the train. I cannot see what occasion he had to go to the depot, unless it is intended to hold that a man cannot be a passenger on a road until he notifies some officer or agent of the carrier that he is a passenger, which I presume the court does not intend to hold. My view being that the defendant in error was a passenger within the meaning of the law applicable to the diligence that devolves upon such carriers, and that there was such a conflict in the testimony with reference to the speed of the train, and the distance at which it could have been seen, it was proper to submit the issues to the jury, and let them weigh the testimony, and pass on the questions of negligence.