JONES M. WAGGONER, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 5, 1910.

1. RAILROADS: Personal Injury: Physical Facts. If the testimony for plaintiff in an action for personal injury is contradictory to physical facts and to common knowledge of men, it does not offer an issue of fact, and a demurrer to the evidence should be sustained.

2. ————: ————: ————: Epilepsy: Fits. W. left his home at 3:25 a. m. in April intending to take a train which passed

at 3:55. His road led across the railway tracks (three in number) at one-half mile from the station and he was run over by the train while on the last track. There was evidence tending to show that he was afflicted with a disease which caused him sometimes to become unconscious and to suddenly fall in a fit, and that he fell on the track in such a fit on this occasion; but it was *held*, that the evidence supporting such view was not of such strength as to justify the court in taking the case from the jury.

3. ————: ————: Evidence: Unreasonable. W. was injured at a railway crossing before daylight in April. There were three tracks, one fifty yards from a double track. He testified that he stopped, looked and listened at the first track and did not hear or see a passenger train then due. That at the first one of the double tracks he again stopped, looked and listened, and neither hearing nor seeing anything, he crossed, and again stopped, looked and listened at the last track, and still did not see or hear a train. That he then stepped on the track and in two or three seconds heard the loud noise of the train, which immediately struck him. That there was no headlight, and that though the cars were well lighted he did not see any light. *Held*, That such evidence was contrary to common experience of men and too unreasonable for belief, and that a peremptory instruction to the jury to find for the railway should have been given.

Appeal from Andrew Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED.

*E. M. Spencer* and *Culver & Phillip* for appellant.

*C. C. Crow* and *Mytton & Parkinson* for respondent.

ELLISON, J.—Plaintiff sued defendant railroad company for damages for personal injuries he alleges were caused by the negligence of defendant, and in a trial by jury recovered judgment for six thousand dollars. Defendant appealed and argues that on the evidence of plaintiff the jury should have been instructed

to return a verdict for defendant. The injury occurred early in the morning of April 22, 1907, on a public road near the village of Amazonia, the first station north of St. Joseph. Plaintiff lived in Amazonia and had been a school teacher for eighteen years, but at the time of his injury was employed at a meat packing establishment in St. Joseph. He had spent Sunday at home and arose at ten or fifteen minutes after three o'clock Monday morning to take a passenger train for St. Joseph, scheduled to arrive at Amazonia at five minutes of four o'clock. The residence part of the village is some distance northwest of the station, which is at the junction of the main line and the Hopkins branch of the railroad. The main line which runs south from Council Bluffs to Kansas City, approaches Amazonia from the west and curves at the station to a southerly course. About half a mile west of the station a public thoroughfare called the "Island Road" crosses the main line, which consists of three tracks. The north track is the old main line and about one hundred and fifty feet south of that are the double tracks of the new main line recently built by defendant.

Plaintiff's house was half a mile north and a block west of the crossing. He could have walked to the station by another road but chose the "Island Road" as the more convenient way, intending when he reached the south railroad track to turn into a pathway which ran east from the crossing to the depot along the the south side of the road and on the right of way. He attributes to the darkness his failure to see the train, and his failure to hear it to the facts that the wind was blowing from the east and the engines were not making steam. The train was drawn by two engines and plaintiff testified that no headlight was shining; that he did not notice the whistle blown or the bell rung, and that he did not become aware of the

approach of the train until just before his injury, when he heard a noise and saw the outline of the engine.

The only witness for plaintiff was himself, and the foregoing is a general outline of his testimony. In order to determine the merit of defendant's demurrer thereto, we will need to examine the particular points which characterize the whole of it. Aside from the pleading there is no denial that plaintiff was injured by one of defendant's passenger trains so that he lost his leg. But defendant insists that it was the result of his own negligence, either in disregard of all prudence by walking onto the track without thought of a train, or, that as he got upon the track in crossing over he, at that moment, fell in a fit, as the result of a disease with which he had for a long time been afflicted, in which case, of course, he could not recover under the allegations of his petition. As bearing out the latter theory, the evidence shows that he had customarily taken this early train for St. Joseph and that he had been guided in the time to get up and get ready for it, by his clock at his house. He stated the time he got out of bed, the time it took him to dress and the time it took him to walk to the crossing where he was hurt, and that it put him at the crossing at 3:35 o'clock, which was twenty minutes ahead of the time the train came by. He had made no pretense of stopping at the crossing and he was therefore asked, on cross-examination, what he was doing in that twenty minutes. His only explanation of this discrepancy was that his clock must have been wrong. Of course his clock might not have shown the correct time; yet it was the same which had governed him rightly theretofore, and if wrong that morning, and he not mistaken in other matters as to the manner of his injury, he would have missed his train had the accident not occurred. The conclusion of defendant is that his clock was right, as it

usually had been, and that he got to the crossing (a half mile from the station) twenty minutes before the train was due, which would have given him ample time to walk down there had he not fallen in a fit. He stated in his testimony that when he got upon the track and heard and saw the train "I fell from fright *or some other cause.*" Again he put it, "I either fell in a fit of fright or the engine struck me."

He was asked if he did not have his wife write a letter to defendant stating that he was subject to attacks and had fallen on the track that morning in one of those fits, and that the train came along and struck him while lying there; and asking if defendant would not give him something. He denied authorizing his wife to write the letter, but admitted he knew of it afterwards.

The defense introduced three witnesses, one the telegraph operator at the station, who testified that plaintiff told him that "as he approached the crossing that some kind of an unconscious spell came over him and he fell." Another went to see him, to whom he said, in explaining the accident, that "as he stepped on the track he had a dizzy sensation come over him, a dizzy spell, and he remembered staggering ahead, stepping forward, and that was all he remembered until he came to." And that he "guessed" he "must have staggered over the track." To the other he stated that he "walked upon the double track and became dizzy and fell." These witnesses were not cross-examined by plaintiff, but these statements were denied by him.

The foregoing has not convinced us with sufficient certainty—our belief that plaintiff fell on the track in a fit caused by disease is not firm enough—to authorize us to overturn what must have been the belief of the jury, viz., that he fell from fright, or by being struck by the engine.

152 App.—12

We therefore pass to a consideration of another branch of the defense which, on the concession that plaintiff was a well man, conclusively convicts him of negligence. He stated that before crossing the first track, he stopped, looked and listened, and neither hearing nor seeing any train, he crossed over and walked fifty yards to the double track when he again stopped, looked and listened, and as he could not see or hear anything of a train he crossed the first of these and before starting over the second he yet again stopped, looked and listened. Considering that he was on foot and not making any noise, these were extraordinary precautions for his safety. Feeling thus assured that no train was near, he stepped onto the track and immediately—within the space of perhaps two or three seconds—was run down by the engine. The engine must have been practically within one hundred feet of him (the width of two ordinary roadways), when he says he last looked and listened. It is not possible in such circumstances that if he looked he did not see, and that if he listened, in the stillness of the night, he did not hear. This is made more apparent by following, in detail, his own mode of telling what he did and what he observed. He said that when he got within twenty-five feet of the track, he had a clear view both ways. That he took "a step or two" on the track, when he heard a noise which sounded like a train. Now a noise, in the quiet of the night, that sounds like a train only a few feet away, must be exceedingly loud, and he himself said it was "quite a noise." Is it believable that this noise could not have been heard two or three seconds before, if he was listening for it?

He accounted for not seeing the train when there was no obstruction to view and nothing to prevent except its being dark, by saying that the engine was without a headlight; but it is conceded that the cars were well lighted, the lights shining out the windows.

To this it is answered that while the light would be easily seen looking at the side of the train, it would not be observed while standing in front. He stated that after he was struck he saw the lighted cars at the station a half-mile away, though at a different angle. We think it unreasonable to say that plaintiff, in the position he was and using the care he states, could not have seen the lights reflected through the windows of the cars, if he had looked before going upon the track.

We have considered the case alone from the standpoint of the evidence given by plaintiff in his own behalf, and find that it "is so contrary to the daily experience of common life, so at war with the conceded and indisputable physical facts," that it does not afford any foundation for the verdict. [Payne v. Ry. Co., 136 Mo. 562, 575.] What was said in Chicago & Northwestern Ry. Co. v. Andrews, 130 Fed. Rep. 65, 71, is quite applicable to plaintiff's situation, viz.:

"Common knowledge tells us that a train of cars drawn over a railroad track by a ninety-ton engine, at a rate of fifty miles an hour, makes a great noise, and that even a strong wind, not of extraordinary or unusual velocity or force, does not render it possible for such a train to come unexpectedly upon one who possesses a good sense of hearing and is reasonably employing it for his protection under circumstances which otherwise permit its free use. That plaintiff in possession of good sight and hearing could have looked and listened and not have seen or heard the train which must have been in plain view and making a great noise, is contrary to all reasonable probability, in opposition to the physical facts, and impossible of belief."

If we turn to the evidence offered by defendant we find it shown by disinterested witnesses, waiting at the station, that the train came in before daylight that early morning, as trains usually do, lighted and seen in the same way and making the usual noise. These had

an opportunity to observe, for on seeing and hearing it coming they crossed the tracks to the platform. They did not have a distinct and affirmative recollection that the headlight was burning, but they observed nothing unusual with the appearance of the train. The engineer, who knew nothing of plaintiff being hurt until several weeks afterwards, did not have affirmative recollection of the headlight burning, but he knew he never ran his train without its being lighted.

It becomes our duty to reverse the judgment, and it is so ordered. All concur.