FRED RATTIE, by His Guardian ad Litem, Minnie Rattie, Appellant, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Respondent.

(215 N. W. 158.)

**Appeal and error — negligence — negligence of plaintiff proximate cause.**
1. Where the plaintiff's evidence, in an action for damages in a personal injury action, shows no negligence on the part of the defendant, and does show that the negligence of the plaintiff was the proximate cause of his injury, a judgment of dismissal on the merits, if error, is error without prejudice and will not be disturbed on appeal.

**Railroads — testimony as to not seeing train.**
2. Where the evidence conclusively shows that a person injured at a railroad crossing must have seen an approaching train if looking, his testimony that he looked, and did not see the train is legally incredible and will be disregarded.

**Railroads — plaintiff had clear vision of railroad track — guilty of negligence.**
3. In an action for injury at a railroad crossing, where the plaintiff's evi-

dence shows that he had a clear vision of the railroad track for at least a quarter of a mile in the direction from which a train of cars was coming; that he looked all the time in that direction, while he was driving from a point thirty steps from the railroad, until his team and wagon were entirely inside a gate that was five steps from the track, his team then being within a few feet of the track; that he then turned to look in the opposite direction, and was at that instant struck with a train coming from the direction he had previously been looking, shows such gross negligence on the part of the plain-tiff as to preclude a recovery.

Opinion filed August 18, 1927.

Appeal and Error, 4 C. J. § 3005 p. 1020 n. 84.   Railroads, 33 Cyc. p. 1004 n. 6; p. 1096 n. 77, 78.   Trial, 38 Cyc. p. 1554 n. 92.

Appeal from the District Court of McIntosh County, *McKenna,* J. Affirmed.

*I. A. Mackoff,* and *Curtis & Remington,* for appellant.
*James Morris,* for respondent.

BURKE, J.   This is an action for damages for injury to the plaintiff on a private railroad crossing of the defendant's railroad.

At the close of the plaintiff's testimony, and after the plaintiff had rested his case, the defendant moved the court to dismiss the action, for the reason, that plaintiff's testimony had failed to establish negligence on the part of the defendant, and that the injury to plaintiff was the result of his own negligence.   The plaintiff claimed that the motion amounted to a motion for a directed verdict and objected to said motion on the merits and under the statute; claiming that the evidence con-clusively shows negligence on the part of the defendant and no negli-gence on the part of the plaintiff, and that the negligence of the plain-tiff, if any, was a question for the jury.   The motion having been duly submitted to the court upon the theories of the plaintiff and defendant, and the court having granted the motion dismissing the action on the merits, the plaintiff appeals.

The only question in the case involves a review of the evidence, and it appears therefrom, that at the time of the accident the plaintiff was eighteen years of age, and employed on the farm of John Weber.   On the 24th day of December, 1924, he was hauling manure and straw

on the Weber farm from the barn on the south side of the defendant's railroad track over a crossing thereon, and to the north side of said track, a distance, he says, of thirty steps from the track, where he piled the manure. He knew that there was a regular train due to pass over the crossing about 1 o'clock and knew that this train was late.

"It was stormy that day," the plaintiff says, "there was a little blizzard; snowing a little." "There is a curve three quarters of a mile east of the railroad crossing, the land in the vicinity is rolling, but it is down grade from the curve to the crossing, a distance of three quarters of a mile." "There is a cut between the curve and the crossing beginning a quarter of a mile east of the crossing, but at no place is the cut as deep as the height of a railroad train." After the plaintiff had unloaded his load on the north side of the track and started back to the crossing, he says, "when I come back I looked every direction and could see no train coming and all at once the horses was on the track and they got scared and so the accident happened." "I did not see any train coming, it didn't whistle, I did not know it hit me before I came to myself, I did not see the train at all." On cross-examination, the plaintiff states, "It was a little blizzard and snowing, the wind was from the northwest, not blowing very hard. When I started back from the manure pile I could see about half a mile, I saw the Weber buildings and the crossing ahead. I had been out there since before one o'clock, I did think about the train being due as I went north across the track and I knew it hadn't gone yet. If the train had gone by while I was at the manure pile I think I would have heard it. It was about 2 o'clock when the accident happened. It was a cold day, I had on a fur cap pulled down over my ears. I left the manure pile and drove straight down to the crossing. The team was trotting. I looked along the track east. I did not see anything. The track is fenced at the crossing. The gate was open. I looked east when I started from the place where I unloaded at the manure pile. I was looking east all the time from the time I left the pile until I looked west when I got inside the gate. The gate is about five steps from the railroad track, and the horses and wagon were all inside the gate before I turned and looked west. During the time I was looking east when I was approaching the track I could see about a quarter of a mile, I could see as far as the curve, but I did not see anything. I was inside the gate when

I looked west. I was looking east, and when I got inside the gate I turned and looked west. I looked east all the time between the manure pile and the gate; it was not snowing very hard so I had a pretty clear view clear down to the curve. Yes, I heard and saw it was an accident; I saw I was struck. I didn't get a chance to jump; it struck the same instant that I heard it."

Mr. Weber testified that, "the curve was three quarters of a mile from the crossing, and the track is straight and up grade from the crossing to the curve. There is a shallow cut, at no place quite as deep as the height of a train. You could not see a train from the crossing all the way through the cut. I have watched trains coming through the cut from that point." The court: "I don't understand how far east of the crossing this cut is." Mr. Weber: "About a quarter of a mile." Page 75 of the transcript.

The train which struck the plaintiff was coming from the east. It does not appear whether it was a passenger or a freight train, no one saw it, not even the plaintiff. The plaintiff was on the north side of the track and the horses, wagon and all the wreckage were on the north side of the track.

It is clear from this evidence, that the plaintiff knew that there was a train expected about 1 o'clock, that it was late that day, that when he started from the manure pile, he could see east a distance of at least a quarter of a mile, and he says, he could see clear up to the curve which was three quarters of a mile east. If he had, as he says, looked east all the time from the time that he left the manure pile until he got inside the gate he must have seen the train, for he could see at least a quarter of a mile up the track and he continued to look east until he got entirely inside the gate. If the track is only five steps from the gate, his horses must have been within five feet of the crossing when he took his eyes from the east, and turning them towards the west, the team and wagon were that instant struck by a train which he did not see.

In passing upon a motion to dismiss an action on the ground that the plaintiff's testimony is insufficient to go to the jury the evidence must be taken as true, unless it is incredible. The rule is stated in Hyatt on Trials, § 1779, page 1770, which reads as follows:

"When to look is to see, testimony that the plaintiff did not look

and did not see ought to be disregarded. It is legally incredible. And this is true though the finding of the jury is predicated on an instruction of the court. In a leading case upon this point it is said: 'It is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true.' . . . 'But an object and power of sight being conceded, the one may not negative the other. In this case the plaintiff had good eyes; the train was approaching him in the night, with the engine's headlight burning brightly; if the plaintiff looked, he must have seen it, or he must have looked very negligently and carelessly; in either case he was necessarily, in the eyes of the law, guilty of contributory negligence, precluding his right to recover.' That such a condition should exist in real life is legally incredible. As a general rule, such evidence—contrary to the physical facts, as to looking and listening—should be withdrawn from the jury." Hook v. Missouri P. R. Co. 162 Mo. 569, 63 S. W. 360. And see Louisville & N. R. Co. v. Moran, 190 Ala. 108, 66 So. 799; Zibbell v. Southern P. Co. 160 Cal. 237, 116 Pac. 513; Brown v. Chicago City R. Co. 155 Ill. App. 434; Maryland Electric R. Co. v. Beasley, 117 Md. 270, 83 Atl. 157; Dyrcz v. Missouri P. R. Co. 238 Mo. 33, 141 S. W. 861; Waggoner v. Chicago, B. & Q. R. Co. 152 Mo. App. 173, 133 S. W. 68; Landrum v. St. Louis, I. M. & S. R. Co. — Mo. App. —, 178 S. W. 273; Paul v. Philadelphia & R. R. Co. 231 Pa. 338, 80 Atl. 365, Ann. Cas. 1912B, 1132; Labelle v. Central Vermont R. Co. 87 Vt. 87, 88 Atl. 517; Harrington v. Rutland R. Co. 89 Vt. 112, 94 Atl. 431; Norfolk & W. R. Co. v. Strickler, 118 Va. 153, 86 S. E. 824; White v. Minneapolis, St. P. & S. Ste. M. R. Co. 147 Wis. 141, 133 N. W. 148.

But this rule applies only to cases where in the nature of things he must have seen or heard the approaching train or car, if he looked and listened. Baltimore & O. R. Co. v. O'Neill, 108 C. C. A. 115, 186 Fed. 13; Zibbell v. Southern P. Co. 160 Cal. 237, 116 Pac. 513; Loftus v. Pacific Electric R. Co. 166 Cal. 464, 137 Pac. 34; Heinz v. Baltimore & O. R. Co. 113 Md. 582, 77 Atl. 980; Davidson v. St. Louis

& S. F. R. Co. 164 Mo. App. 701, 148 S. W. 406; Artz v. Chicago, R. I. & P. R. Co. 34 Iowa, 153; Chicago & N. W. R. Co. v. Andrews, 64 C. C. A. 399, 130 Fed. 65; Keller v. Erie R. Co. 183 N. Y. 67, 75 N. E. 965; Dolfini v. Erie R. Co. 178 N. Y. 1, 70 N. E. 68. And see Walsh v. Pennsylvania R. Co. 222 Pa. 162, 70 Atl. 1088; Myers v. Baltimore & O. R. Co. 150 Pa. 386, 24 Atl. 747; Schofield v. Chicago, M. & St. P. R. Co. 114 U. S. 615, 29 L. ed. 224, 5 Sup. Ct. Rep. 1125; Chicago, R. I. & P. R. Co. v. Pounds, 27 C. C. A. 112, 49 U. S. App. 476, 82 Fed. 217; Southern R. Co. v. Smith, 40 L.R.A. 746, 30 C. C. A. 58, 52 U. S. App. 708, 86 Fed. 292.

The authorities seem to be unanimous in holding that such testimony is incredible.

According to the testimony in the case at bar, the plaintiff was looking east all the time, from the time he left the manure pile until he got through the gate and inside the fence, which inclosed the railroad, and was only five steps from the track. He could see the crossing and had a clear vision of the track to the cut, a quarter of a mile east of the crossing. Immediately on his turning to look west the team and wagon were struck. He saw no train, he heard no train, and he did not know that it was the train that struck him, until after he recovered consciousness. Where did the train come from? If the plaintiff could see up the track for at least a quarter of a mile, and there was no train in sight when the plaintiff's horses were only a few feet from the track, and yet on the very instant that he took his eyes from the track east of the crossing, and turned to look west the accident occurred.

In the case of Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976, this court said: "A driver about to cross a railroad track at a public crossing in the country is charged with knowledge that such crossing is a dangerous place, and that it cannot be assumed that cars are not approaching from either direction. He is bound to assume that cars are coming until satisfied by direct evidence to the contrary, and to this end must vigilantly use his sense of sight and hearing and do all that ordinary care and prudence would dictate, having in view the surrounding circumstances, to avoid injury, regardless of whether any signal is given by an approaching train."

In the recent case of State ex rel. North Dakota Workmen's Comp.

Bd. v. Great Northern R. Co. 54 N. D. 400, 209 N. W. 853, this court said "that an action to recover damages for personal injuries sustained by a driver of a truck in colliding with a railroad train at a crossing where it appeared that a view of one approaching . . . was unobstructed . . . within 2,000 feet of the crossing and where the only obstruction to the driver's vision was afforded by the top over the seat of the truck, and where such driver approached the crossing without stopping or looking, it is held, that he was guilty of contributory negligence precluding a recovery."

The cases on negligence, and contributory negligence, in approaching railroad crossings, are all thoroughly reviewed and cited in Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. and State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. supra, and in applying the settled law to the facts in the case at bar, it is clear that the plaintiff's evidence affirmatively proves that his own negligence was the proximate cause of his injury.

Since the plaintiff's evidence shows affirmatively that he has no cause of action, the granting of defendant's motion to dismiss, and, the entry of judgment on the merits thereon, a practice not to be approved under chapter 133, Session Laws 1921, if error, was error without prejudice and will not be disturbed on appeal. The judgment is affirmed.

. BIRDZELL, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.