This is an action for damages for the breach of a written contract. Defendant, answering, admitted the making of the contract, denied a breach on his part and counterclaimed for damages for an alleged breach thereof on the part of the plaintiff.
The plaintiff is engaged in the manufacture and sale of flour in the *Page 334 
city of Minot. The defendant is a baker having his place of business in the same city. On August 16, 1926, plaintiff and defendant entered into a written contract, for the breach of which this action was brought, whereby the plaintiff sold to the defendant and the defendant bought 1000 barrels of flour in bulk at $7.60 per barrel, defendant to furnish the containers at least 14 days before delivery, the flour to be delivered to the defendant at his bake shop as needed within eight months from the date of the contract and to be paid for in cash as ordered out. The contract, among other things, provided that "the seller may cancel this contract if there is any unpaid past due bill or if the property and assets of the buyer are in liquidation. If the buyer fails to furnish shipping instructions or packages as herein provided the seller may, (1) cancel the contract or (2) terminate the contract, the buyer to pay to the seller the difference between the contract price and the seller's cost of replacement. . . . If the buyer shall fail or refuse to pay for any shipment under this contract, then the seller shall resell such shipment and the buyer shall pay all loss, damage or expense arising from such refusal. If shipments are not made by the seller within the time of shipment unless for cause beyond the seller's control, the buyer may (1) cancel the contract, or (2) terminate the contract, the seller to pay to the buyer the difference between the contract price and the market value of the commodity covered by the contract at the date of default at the point of delivery. . . ." The defendant during several years preceding had bought more or less flour from the plaintiff, and on August 16 when the contract in suit was made the defendant was indebted to the plaintiff about $1900. There was also in existence at this time a prior similar contract between the parties for 200 barrels of flour at $7.70 per barrel on which only 99 barrels had been delivered. The evidence tends to show that the defendant kept no books to speak of and relied mainly upon the bookkeeping of the plaintiff to ascertain the state of accounts between them. When the contract in suit was made the defendant inquired as to how much flour remained to be delivered under the prior contract and was advised that there was a small quantity yet to be delivered. After August 16 flour advanced somewhat in price and in September and October it was worth about 30 cents per barrel more than the price stipulated in the *Page 335 
contract. Thereafter it declined in price. During the remainder of the life of the contract the market price was somewhat less than the contract price. Defendant's business requirements were from 5 to 14 barrels of flour a day. On Saturday, September 25, he needed some flour. He called the plaintiff's office over the telephone and asked that enough to meet his needs over Sunday be delivered. Then followed the conversation about which this law suit revolves. Defendant's testimony with respect thereto is as follows:
"I told him (plaintiff's manager) to send me some flour. He said `We got to have some money.' I said `If you don't send me the flour open account send it C.O.D. and I pay on delivery.' He say `We got to have some money.' I say `Well if you don't want to send the flour you can keep your flour. I send you a check for $200 on account of the four on the new contract.' He says `We are not going to do no such thing.'"
Defendant then testified that on the following Tuesday he mailed a check for $200 to the plaintiff and further testified:
"Q. And is that the check you sent pursuant to the conversation you had on Saturday?
"A. Well I told him on Monday or Tuesday I send a check.
"Q. And you did do that?
"A. Yes.
"Q. Did you have a letter with it?
"A. No, I don't had that. I said him through the phone I going to send check on Monday or Tuesday for $200.
"Q. And you told him that was on this contract?
"A. Yes.
"Q. And for flour?
"A. Yes.
"Q. And after he got this check you demanded flour from him on that contract, did you?
"A. Yes, sir.
"Q. What did he say?
"A. Well you got to pay the old account first. *Page 336 
"Q. And he wouldn't deliver any flour on the new contract until the old account had been paid?
"A. No, sir."
It is conceded that no deliveries were made under the new contract. On the 12th of April, 1927, just prior to the expiration of the period within which deliveries were to be made under the new contract, plaintiff notified the defendant that it had flour to fill the contract and would require the defendant to receive and pay therefor or pay damages for his failure to do so. On April 16, 1927, the date of the expiration of the contract, flour was worth less than the contract price. At that time the plaintiff had on hand about 500 barrels.
The plaintiff in this action seeks to recover the difference in price between the contract price and the market value of flour on April 16, 1927, and for the expense it was put to in selling the 1000 barrels of flour which the contract called for. On the other hand, defendant contends that the plaintiff and not he breached the contract; that he was forced to buy at an enhanced price to meet his requirements and asks for damages on account of such alleged breach.
At the close of defendant's case and again at the close of the whole case the plaintiff moved the court for a directed verdict in its favor and against the defendant on both the main cause of action and the counterclaim. This motion was denied. The cause was submitted to the jury. The jury found against the plaintiff on the main cause of action and awarded damages to the defendant on the counterclaim. Judgment was entered on the verdict as returned. Thereafter the plaintiff moved for judgment notwithstanding the verdict or in the alternative for a new trial. The court granted the motion for judgment notwithstanding the verdict as to the counterclaim and denied both branches of the motion as to the main cause of action and ordered that the judgment theretofore entered be modified accordingly. Thereupon a modified judgment was entered dismissing both the main cause of action and the counterclaim and for costs in favor of the defendant. Plaintiff appeals from this judgment and from the order denying its motion for judgment notwithstanding or for a new trial.
The trial court held that the jury by its verdict found that the plaintiff and not the defendant had breached the contract and that the evidence *Page 337 
in the record was sufficient to sustain such finding, but ordered judgment for the plaintiff notwithstanding the verdict on the counterclaim on the ground that there was no competent evidence of damage to the defendant on account of such breach.
Plaintiff on this appeal strenuously urges that the evidence is not sufficient to sustain the verdict as returned; that in fact it affirmatively appears there was a breach of the contract by the defendant and not by the plaintiff.
In cases of this character questions of fact are primarily for the jury, and the jury having returned a verdict that verdict will not be disturbed if there is any credible evidence which will reasonably sustain it. In the instant case the trial court held upon the plaintiff's challenge that the evidence was sufficient to sustain the verdict. In considering the propriety of the verdict and of the trial court's determination that the evidence was thus sufficient, this court must, of course, take that view of the evidence which is most favorable to the defendant. His case rests upon his own testimony, supported by such corroboration as the record otherwise affords. We must consider this testimony as true unless the remainder of the record demonstrates that it is incredible. If it is accepted as being a credible recital of what was said and done by and between the defendant and the plaintiff's agents, the verdict must stand. If it is incredible then the verdict cannot stand. See Rattie v. Minneapolis, St. P. S. Ste. M.R. Co. 55 N.D. 686, 215 N.W. 158.
There is no question but that the parties entered into the contract sued upon. The defendant admits this but contends that he was at all times ready, willing and anxious to perform but that the plaintiff failed and refused to carry out the contract unless the defendant first discharged his prior indebtedness, and that under the terms of the contract it was not necessary for him to do this. Notwithstanding the defendant's positive testimony heretofore referred to, the remainder of the record refutes his theory as to the facts. At the time the contract in suit was made a prior contract calling for deliveries of flour was in existence. The parties contemplated that this contract should be fulfilled before deliveries were to begin on the new contract. The defendant says that he inquired at the time of the execution of the latter as to how much flour remained to be delivered under the old contract and *Page 338 
that the plaintiff agreed to make these deliveries. On September 25 when the conversation vital to this suit was had, the defendant required flour. He says that at that time he offered to pay for flour on the new contract as the same was delivered but that delivery was refused unless the old indebtedness was paid. His testimony also is that he then said he would send a check the next week. Notwithstanding the fact that no flour was delivered by the plaintiff and he had to procure flour elsewhere, on the Tuesday following he sent a check for $200. He enclosed no letter with this check. He says that in the conversation on the 25th he directed that the check was to be applied on the new contract. In this he is wholly uncorroborated. He testifies positively that thereafter no flour was delivered though he made a demand for same and sent 50 sacks in which to put it. He does not claim that there was any later conversation with the plaintiff's agents respecting the matter. On the other hand, plaintiff denies that there was any conversation with respect to the new contract and denies that there was any offer on the part of the defendant to pay for flour upon delivery. It is clear that when the $200 check was received by the plaintiff it was applied on the old indebtedness. It is likewise clear that on October 1st 50 sacks, 25 barrels, of flour were delivered by the plaintiff to the defendant. Though defendant positively denies this delivery the written evidence conclusively establishes that it was made. Subsequently on October 15 defendant paid $250 and again on November 12 he paid $200 and again on December 7 he paid $50. Other deliveries of flour were made to him by plaintiff: 1 barrel on October 29, 5 barrels on November 2, 12 1/2 barrels on November 24 and 5 barrels on December 7. The defendant also denies these deliveries, but again the written evidence is conclusive against him. He admits that his signatures to the receipts showing these deliveries are authentic and admits he received the flour described in the receipts, but says that the dates are not correctly stated. He has no record or memorandum to sustain his statements. He relies wholly on his memory. Subsequent to the 1st of November flour had declined in price and thereafter at all times during the contract period was lower than the price called for in the contract. On December 1st defendant entered into a contract with the Russell-Miller Milling Company for flour of the same quality as that which the plaintiff was to furnish under the contract and at a price *Page 339 
15 cents per barrel cheaper than the contract price. The record also demonstrates that the defendant was exceedingly slow in the payment of his bills, whether to the plaintiff or to his other creditors. On November 13, 1925, he owed the plaintiff $71.95 on account and on September 25, 1926, this indebtedness had increased to $1909.22. In the meantime, though he had a contract for flour with the plaintiff, he bought and entered into contracts to buy large quantities from other mills and dealers. On December 16 plaintiff brought suit to recover the amount due on account of the transaction between it and the defendant. The account as between it and the defendant on that date was set forth in the complaint. This account shows payments and deliveries as above stated. The defendant stipulated that the account was correct and that judgment might be entered against him for the amount of indebtedness as shown there and subsequently discharged such judgment. Thus on the whole record it appears that the defendant must have been in error when he testified as he did respecting the conversation on September 25 and subsequent occurrences, and thus the evidence is not sufficient to sustain a finding that there was no breach of the contract by the defendant and that there was a breach by the plaintiff. However, we do not feel justified in ordering judgment notwithstanding the verdict. The order denying the plaintiff's motion for a new trial will therefore be reversed and a new trial will be granted, costs to abide the event.
BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur. *Page 340