FRED H. MARSHALL, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a Foreign Corporation, Arthur W. Clark, Joseph Sagmiller, and Ollie Studebaker, Appellants.

(227 N. W. 55.)

Opinion filed August 14, 1929. Rehearing denied October 22, 1929.

*Conmy, Young & Burnett*, for appellants.

*Knauf & Knauf,* for respondent.

BIRDZELL, J. This is an action to recover damages for personal injuries sustained by the plaintiff in a collision which occurred on April 17, 1926, upon a crossing of a branch line of the Northern Pacific Railway Company near the village of Breien in Morton county. Damages are also predicated upon the destruction of the plaintiff's automobile. In the trial court the plaintiff had judgment and the defendants appeal. The facts are as follows: The plaintiff was a resident of Huron, South Dakota, and for approximately two years had been engaged as a traveling salesman in a territory comprising the state of South Dakota and the southern half of North Dakota, embracing the Northern Pacific main line and its branches. He traveled by automobile. In the morning of April 17, 1926, between nine and ten o'clock, the plaintiff and a young man named Blount left Flasher in the plaintiff's car to travel eastward as far as Cannon Ball on the Missouri River. They had made the town of Timmer and as they were approaching Breien they drove along a highway which is parallel with the railroad for some distance and on the north side of it, travelling eastward. As they neared the town they turned to the right at right angles where the road crossed the railroad track. There the car was knocked off the track by the engine of an approaching train, the automobile being demolished, the plaintiff being seriously injured and Blount killed. In submitting the case to the jury the trial court

submitted two charges of negligence; one as to whether or not the defendants were guilty of negligence in omitting to give the necessary warning signals upon the approach of the train to the crossing; the other, as to whether the railroad and the crossing were so maintained by the defendant company as to apprise persons approaching the crossing of the fact that they were approaching a place of danger and whether the crossing was so maintained as to enhance the danger. The question of the plaintiff's contributory negligence was also submitted. The principal questions argued upon this appeal are the sufficiency of the evidence to justify the verdict upon both the questions of negligence and absence of contributory negligence.

The testimony on behalf of the plaintiff is that he had not been over this part of his territory before; that he was not familiar with the roads; that he could not say he knew the towns of Breien, Timmer and Flasher were on the railroad; that he inquired at Timmer or Flasher how he could get to Breien, but he received no definite instructions; that there were no signs; that he stopped in Timmer for a time, then followed a trail out of there, and between Timmer and Breien he crossed the railroad twice. After crossing the last time he went in a northeasterly direction on a trail with grass growing up between the tracks, with numerous curves and dips in the road. He went down in a hollow, crossed a bridge or culvert and as the road rose again proceeded a short distance to a turn. At the turn he looked to the right, straight ahead and to the left. He turned, looked east again (toward Breien) and noticed the car take a sudden rise. He looked again and just as he looked Blount called his name. They both saw the engine and the collision occurred instantly. The plaintiff testified that between Timmer and Breien he thought he was lost most of the time; that he had crossed the railroad about a mile west of the crossing in question but that he was not aware of the presence of the railroad as he approached the latter crossing; that his vision was so obstructed by grass, weeds or other bushy growth as to prevent his seeing the rails or the railroad; that he did not see the railroad crossing sign because it was too high. There were two lines of poles—one a telegraph line, the other a telephone line along the right of way, which according to the plaintiff's evidence obscured one's vision of the track as he would look up or down the track from certain angles as he approached the

crossing. He testified that he saw some buildings in Breien but paid no attention to them; that as he approached the crossing there was an abrupt rise of about five feet near the railroad track; that he returned to the scene of the accident in June, 1927, and at that time the condition of the approach to the crossing had been changed to the extent that it had been filled in about four feet at the lowest point. The plaintiff's evidence is corroborated in this respect by friends who came out from Minneapolis to see him immediately upon learning of the accident and one of whom later returned to the scene in June, 1927. But, on the other hand, the testimony of witnesses for the defendant, who lived in the vicinity and who had been familiar with the crossing for the period both before and after the accident, down to the date of the trial, is to the effect that there had been no change in the grade of the approach.

The plaintiff heard no bell or whistle, although he was alert and listening for any sound that might be heard. There is considerable testimony on behalf of the plaintiff indicating that there were grass and weeds on the railroad right of way, between the highway and the rails, of the previous season's growth sufficient to obstruct the vision. Under this evidence the grass and weeds were not to exceed two feet and a half high. This testimony is disputed by witnesses for the defendants who testify that the grass and weeds upon the right of way had been burned off by a burning machine the year before. In addition to this, photographs and a profile map show the uniform grade of the railroad line in its relation to the parallel highway to be high and even compared with the grade of the highway, which is uneven and in most places considerably lower than that of the railroad. The plaintiff's evidence concerning the crossing signals is likewise disputed both by the trainmen and others in the vicinity at the time.

It will be assumed, for the purpose of this decision, that the evidence is sufficient to establish negligence on the part of the defendant in failing to give the necessary warnings or signals upon approaching the crossing; likewise, that the defendant railroad company was negligent in the manner in which it maintained its crossing, and we will pass at once to the question of the sufficiency of the evidence on the question of contributory negligence.

The burden of proof of contributory negligence is upon the defend-

ant, and it is only where the evidence is such that reasonable minds must conclude that the plaintiff did not act with reasonable care for his own safety that the question ceases to be one for the determination of the jury. The accompanying photograph taken the year following the accident gives a general view of the highway upon which the

plaintiff was traveling and of the railroad crossing as he approached Breien: The train shown in the picture faces west, while the train with which the plaintiff collided was traveling east. The camera was stationed 250 feet from the crossing with the lens at approximately the same distance from the ground as would be the eyes of the driver of an automobile similar to that used by the plaintiff. On the morning of the collision the plaintiff had been in two towns situated upon the same railroad and he had been driving substantially parallel with it for some distance. He had crossed the railroad track twice between Timmer and the crossing in question, the last time about a mile from this crossing. He was confronted with every evidence of the existence of the railroad and the crossing that the company is required to give for the benefit of the public. In addition to that, there were within

his immediate vision at least two structures which are generally associated with railroads, namely, a water tank and an elevator. If the defendants are not chargeable with a breach of any duty owing to the plaintiff, the fulfillment of which would tend to apprise him of the presence of the railroad, their liability is not increased by reason of the fact that the plaintiff did not actually know or was not mindful that he was approaching a railroad crossing. The only evidence which might be thought to show a breach of duty in this respect is that relating to weeds and grass standing on the right of way, to the location of the telephone and telegraph poles, the statement of witnesses that the railroad or the track could not be seen, and plaintiff's statement that his view was obstructed. Giving to this testimony all possible probative force, it does not show a breach of any duty owing by the defendant company to make its railroad more conspicuous and the indicia of danger more pronounced. At most the weeds and grass of the previous season's growth could have had but slight tendency to conceal the railroad or the presence of a train upon the track. The crossing was plainly marked with a railroad crossing sign which must have been in plain view of the driver, particularly if his testimony with reference to the steep approach to the crossing is correct. Besides, the other indications afforded—the grade, the double line of telegraph and telephone poles, the elevator, the water tank—so plainly marked the presence of a railroad as to reduce the plaintiff's statement that his vision was obscured to an arbitrary pronouncement or one that is not reasonably descriptive of the patent physical facts. Testimony which is contrary to demonstrated or physical facts will not support a verdict. 2 Hyatt, Trials, §§ 1773, 1774. We can find no evidence indicating a failure to perform any duty owing to the plaintiff which would have better apprised him of the fact that he was approaching a place of danger. "It would probably seldom happen," says the supreme court of Wisconsin in Shaver v. Davis, 175 Wis. 592, 185 N. W. 227 (page 599 of the state report and page 230 of the Northwestern Reporter), "that a traveler would be excused for not knowing of his approach to a railroad track in broad daylight, and such ignorance would generally defeat a recovery." There may be circumstances which would excuse one for not knowing that he was approaching a railroad track, such, for instance, as a growth of shrubs or trees sufficient to really obscure

the view; but, under the evidence in the instant case, there was no growth which can reasonably be said to have obscured the view of the railroad or the crossing. On the contrary, within the range of vision of the driver there was every evidence of its existence. It follows that the plaintiff's conduct upon the approach to this crossing must be viewed from the standpoint of one aware that he was approaching a place of danger. If the plaintiff did not know that he was crossing the railroad, he was clearly negligent.

Was the plaintiff negligent in his approach to a place of danger? As before indicated, he testified that he looked and listened. Though he looked, there was nothing to prevent his seeing the train for a considerable distance down the track. In Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 215 N. W. 158, this court approved the rule stated in 2 Hyatt, Trials, § 1779, as follows:

"When to look is to see, testimony that the plaintiff did look and did not see ought to be disregarded. It is legally incredible. And this is true though the finding of the jury is predicated on an instruction of the court. In a leading case upon this point it is said: 'It is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. . . . But an object and power of sight being conceded, the one may not negative the other. In this case the plaintiff had good eyes; the train was approaching him in the night, with the engine's headlight burning brightly; if the plaintiff looked, he must have seen it, or he must have looked very negligently and carelessly; in either case he was necessarily, in the eyes of the law, guilty of contributory negligence, precluding his right to recover.' That such a condition should exist in real life is legally incredible. As a general rule, such evidence—contrary to the physical facts, as to looking and listening—should be withdrawn from the jury."

The only obstacles which would prevent the driver from seeing the train as he approached the crossing were the telegraph and telephone poles arranged in two lines, one line being 52 feet from the center of

634

the railroad track, the other 42 feet. Hence, under the view of the evidence most favorable to the plaintiff he had an unobstructed view of the track for more than 35 feet within which he could have avoided a collision. His failure to take the necessary precautions in these circumstances amounts to negligence contributing to his injuries within the rule that precludes recovery. See Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Crowson v. Minneapolis, St. P. & S. Ste. M. R. Co. 36 N. D. 100, 161 N. W. 725; Amenia & S. Land Co. v. Minneapolis, St. P. & S. Ste. M. R. Co. 48 N. D. 1306, 189 N. W. 343; State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. 54 N. D. 400, 209 N. W. 853; Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 215 N. W. 158; 1 Berry, Auto. 6th ed. §§ 908 and 919.

It is obvious that the collision would not have occurred but for the failure of the plaintiff to be mindful of his approach to a place of danger and to take ordinary precautions to avoid being injured. Clearly, the plaintiff was guilty of negligence contributing to his injuries. The judgment appealed from must be reversed and the action dismissed. It is so ordered.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.