[File No. 6711]

STEVE SCHNELL, Respondent, v. NORTHERN PACIFIC RAIL-
WAY COMPANY, a Corporation, C. H. Viets and E. J. Robi-
deau, Appellants.

(1 NW(2d) 56)

Opinion filed October 13, 1941.   Rehearing denied December 13, 1941

*Conmy & Conmy,* for appellants.

*Murray & Murray* and *Francis Murphy,* for respondent.

NUESSLE, J. This action was brought to recover damages suffered by the plaintiff in a railroad crossing accident. The case was tried to a jury and defendants had a verdict. Judgment was entered thereon.

Thereafter plaintiff moved for a new trial. The motion was granted. Whereupon defendants perfected the instant appeal.

Plaintiff predicates his cause of action on negligence on the part of the defendants in that there was no light or no adequate light on the rear of the tender of the engine that collided with his car; that the whistle was not blown or the bell rung as the engine approached the crossing; that the crossing was a dangerous one over a much used highway and there was no warning light or other device to notify the public of it; and that the railway company failed to post a flagman at the crossing to warn travelers when a train was approaching. The defendants, answering the plaintiff's complaint, denied any negligence on their part and further alleged that such damage and injury, if any, as the plaintiff suffered were on account of his own contributory negligence in failing to exercise due care in approaching the crossing and attempting to pass thereover.

We first state facts shown on the record at the close of the plaintiff's case and concerning which there is no controversy: The plaintiff is a farmer and a stockbuyer. In carrying on his business he frequently goes to Fargo. The defendant, Northern Pacific Railway Company, owns and operates a railway running east and west through the city of Fargo. The defendants Viets and Robideau are members of the crew of the train which collided with the plaintiff's automobile. The railway company maintains a Y on the west side of Fargo, the east leg of which crosses U. S. Highway No. 10, just within the city limits and at the point where a city street, 23rd Street, running north and south, intersects the highway at right angles. U. S. Highway No. 10 runs east and west, parallel with the main line of the railway. The Y crosses this highway from the northeast to the southwest at an angle of about 45 degrees. The railway company uses this Y for turning cars, for switching from its main to a branch line, and for making connections with the Milwaukee Railway. The Y is not greatly used. The crossing within the city limits is marked by regular railroad (crossbuck) signs, one on each side of the highway just west of the crossing and on the west side of 23rd street. There is also a sign on the north side of the highway some 400 feet east of the crossing. There is no gate, warning bell or light at the crossing, and no flagman was posted there to warn travelers of approaching trains on the night of the acci-

dent. The terrain thereabouts is flat. The highway and the Y are on the same level. About 150 feet east of where the east leg of the Y crosses the highway and south of it, there is a gasoline filling station operated by one McNally. This is the first building to the east. There are no buildings near the Y to the west. The view from the highway for a distance of more than 300 feet east from the crossing down along the east leg of the Y is unobstructed. The photograph, Exhibit 9 herewith, shows the crossing as of the time of the accident. This photograph was taken with the camera 200 feet east of the crossing, facing southwesterly in the direction whence the train came. It shows the highway, the east leg of the Y where it crosses the highway, and the track southwesterly from the crossing.

Plaintiff's testimony further is that on September 24, 1938, he was in Fargo. About eight o'clock in the evening he set out in his 1938 Ford sedan to return home, driving west on Highway No. 10. He was accompanied by Mrs. Kuntz, a friend of his family. The night was clear, but it was quite dark as he drove toward the crossing. He had

driven over this highway a good many times and knew where the crossing was. The weather was cool. The windows of the car were lowered four or five inches from the top. Plaintiff knew he was approaching the crossing and, on that account, looked and listened, but neither saw any train on the line nor heard any bell or whistle. The traffic is heavy on the highway at this time of the night. Plaintiff says there was a continuous string of cars close together coming from the west. They had their lights on and he was blinded by them. Several of them passed him when he was 15 or 20 feet from the crossing. And there were cars going west ahead of him. The nearest was about 100 feet ahead. Plaintiff was driving on the north side of the paved portion of the highway at 15 to 20 miles an hour. His brakes were in good condition and he could have stopped the car instantly had he tried to do so. The pavement was 20 feet in width. He could see down his own lane but could not see to the south on account of the glare of the cars coming from the west. Without slowing down he continued on over the crossing. Just as he passed over the railway track he was struck by something which he later learned was the rear end of the tender of a switch engine, backing up the Y from the southwest and pulling seven cars. His car was shoved along the track ahead of the tender. He was very seriously injured and his car was badly wrecked.

Mrs. Kuntz, called by the plaintiff, testified that she was unacquainted with this highway and did not know of the crossing. She did not see the engine until after the accident; nor did she hear any bell or whistle. Her testimony with respect to the speed at which plaintiff was driving, to the cars ahead going west, and those coming from the west with their lights burning brightly, is to the same effect as that of the plaintiff.

There were several persons at McNally's filling station at the time of the accident. Chester Baker, employed at the station, testified he observed the plaintiff as he drove past the filling station, and that he was then driving about 25 miles per hour. He recognized the plaintiff, who had been a customer at the station where Baker had waited upon him at various times. There were no cars passing east between the plaintiff and the station at the time Baker saw him, though a number had passed a moment before. At this time of the day cars pass over this railroad crossing at an average of two per minute, but when plaintiff drove by there was no traffic from the west in front of the oil station

—it was slowing down for the train. Baker saw the collision. The tender pushed the plaintiff's car 30 feet from the center of the pavement along the track and onto the shoulder of the highway. At the time Baker saw the plaintiff, and at the time of the accident, he was engaged in servicing the car of one of his customers, Koltes by name. He was talking with Koltes when he heard the engine whistle a continuous blast. He remembers hearing it because it was so loud that it was difficult to carry on the conversation. When he heard the whistle he looked down the Y and saw the engine and cars approaching. He could them plainly. They were about 150 feet away. He did not anticipate a collision. He did not hear any bell ringing. There was a lighted switch engine light on the rear of the tender.

Koltes, the customer whose car Baker was servicing, testified that at the time in question he was sitting in his car facing north, with his feet on the running board. The traffic on the highway was as usual. It was dark and the cars had their lights on. He heard the crash of the collision, looked up, turned, and saw the engine. It was moving slowly and pushing plaintiff's car ahead of it along the track. It stopped just as it reached the edge of the highway, about 20 feet from where it struck the car. The northeast corner of the tender struck the car, just ahead of the driver's seat. Koltes did not hear any whistle or bell.

McNally, who owned the service station, was also called by the plaintiff. At the time of the accident McNally was in his office listening to the radio. He did not hear any whistle or bell, but he did hear the crash of the collision. He turned about and looked out of the door and saw the engine shoving the plaintiff's car along the track to the northeast. It shoved it some 20 feet before stopping. The northeast corner of the tender struck the car at the back end of the hood and crushed it in. Many cars pass along the highway over this crossing at the time of the evening when the accident occurred, at least one every thirty seconds on the average. McNally observed no light on the tender and did not know whether or not one was there. Thus the case stood when the plaintiff rested.

The defendants, in support of their case, among other witnesses called the members of the train crew, five in number, who testified as to the switching operations on the night of the accident. According to their testimony the head brakeman, foreman in charge at that time, was busy on the main line of the railroad. The crew with the engine

consisted of the engineer, fireman, and the front and rear brakemen. The rear brakeman was in the cab with the engineer and fireman. The engine backed slowly at not more than eight miles per hour along the east leg of the Y toward the crossing where the accident occurred. There was some traffic on the highway. It was moderately dark. The whistle was blown continuously as the engine proceeded up the Y. There was an automatic bell ringer on the engine and the bell was ringing continuously. The engineer was on the lookout. The fireman was in control of the engine. The engineer looked to the northeast, the fireman to the northwest. The engineer saw the plaintiff's car approaching from the east, 400 or 500 feet from the crossing. The engine was then 100 or 150 feet from the highway. There was no other car going east toward the plaintiff. Plaintiff was coming very fast. He slowed down. The engineer thought he was about to stop, so proceeded. Just as the tender reached the edge of the highway the car started up again very fast attempting to pass over. It was then about 75 feet from the crossing. The engineer yelled to the fireman to stop, and the fireman dynamited the engine bringing it to a stop within a few feet. But the engine and the car were so near together when this was done that the front part of the car struck the northwest corner of the tender as the car swerved to go around the engine over the crossing. The engine shoved the car ahead of it and stopped within 15 or 20 feet. The rear of the tender with the car was right on the edge of the paving. There was a headlight on the rear of the tender some ten feet above the ground, and this was lighted. As soon as the engine stopped the engineer got off on the east side, the brakeman on the west side, and both ran around to the car. The car was right up against the back of the tender, hooked into the northwest corner. "Kind of caught on the tank beam." The brakeman jerked the car door open and pulled Mrs. Kuntz out. The engineer had the fireman move the engine away so they could get Schnell out of his car. After this was done the fireman came back to the car and got in in order to extricate the plaintiff. He asked plaintiff if he was hurt, but plaintiff made no reply. The fireman then said the radio dial was on and plaintiff himself reached over and turned the button off. No sound was coming from the radio. A photograph taken of the rear of the tender after the accident, received in evidence without objection, shows that the footboard on the right side (the northwest corner) was bent under the tender, while the footboard on the left side

(the northeast corner) was in its normal position and condition.

The defendants also called one Byron, who was a resident of Valley City, employed by the Farm Security Administration. Byron was driving east along the highway on the south side thereof. Just as he approached the west leg of the Y, he heard an engine whistle. He looked to the north and saw no engine, then to the south and saw the engine in question backing slowly up the east leg of the Y. The headlights were lighted and he had no difficulty in seeing it. He heard no bell. He had been driving rapidly—about forty miles an hour—but put on the brakes and stopped his car some 50 feet west of the crossing just as the tender reached the highway. He was looking at the engine and did not see the collision but heard the crash. At that time the engine was just about stopping. The northwest corner of the tender struck the front part of the car and shoved it along the track to the shoulder of the highway. The engine stopped after going 10 or 15 feet. He left his car and ran over to the plaintiff's car. One of the train crew had opened the door of the car and helped Mrs. Kuntz out. She was crying and upset, so Byron led her away. He saw that the radio light was on in the car, though no sound was coming from the radio. There was no car immediately ahead of him going east and none behind him for some distance. His was the only car there. The engine was moving slowly, in his judgment not to exceed 6 or 8 miles an hour.

One Dowling was also called on behalf of the defendant. Dowling is a resident of Fargo, employed by the Cass county road department. On the evening in question he was at Akeson's place at the Cass county road shop on the north side of the highway about a block and a half east of the crossing. He and Akeson were waiting in the latter's car to drive onto the highway and go west. They saw the plaintiff's car approaching and waited for it to pass, then drove onto the highway behind him. There was no car between them. Plaintiff was about 100 feet ahead. Dowling heard the train whistle and saw it about 150 feet from the crossing. It was going slowly. Both the engine headlight and the light on the rear end of the tender were lit. When Dowling saw the train he called Akeson's attention to it. The train slowed down a little. It appeared to him the car ahead was stopping. He paid no further attention to the car. They were watching the train when he heard the noise of the collision. They pulled up on the side of the highway and stopped and walked up to the scene of the accident. The

back end of the tender was not quite off the pavement, and plaintiff's automobile was right on the shoulder.

At the close of the plaintiff's case, and again at the close of the whole case, the defendants moved for a directed verdict on the ground that the plaintiff had not established facts sufficient to warrant submitting the case to the jury. Both motions were resisted, and pursuant to the statute, § 7643, 1925 Supplement, as amended by chapter 245, Session Laws 1935, were denied, and the case was submitted. The jury returned a verdict for the defendants. They used a form of verdict given to them by the court, as follows:

"We the jury, impanelled and sworn to try the above entitled action, do find for the defendants."

But they inserted in the form after the foregoing:

"Not guilty of negligence."

Judgment for the defendants was entered on this verdict. Thereafter the plaintiff moved for a new trial, assigning as grounds for the motion, the insufficiency of the evidence and numerous errors predicated on rulings on matters of evidence, remarks of the court made during the course of the trial, instructions given, and the manner in which the verdict was returned. After hearing on this motion the trial court ordered a new trial, reciting "This order is based upon the motion for a new trial, specifications of error, and insufficiency of the evidence thereto attached, the verdict of the jury, the judgment and pleadings, the settled statement of the case, and all the records and files in the action." In his memorandum opinion, however, the trial judge considering the several alleged errors assigned as grounds for the motion, held that there was no prejudicial error except in one particular instance predicated on the introduction of a certain photograph, on account of which he granted the motion. He made no reference to the matter of the alleged insufficiency of the evidence to sustain the verdict. In this connection, see § 7945, Comp Laws 1913.

The defendants on this appeal contend that the trial court's ruling on the admissibility of the challenged photograph, which was held to be erroneous by the court, was in fact not erroneous, that therefore no new trial should have been ordered; that, in any event, even though there was error in this respect and with respect to the other matters on which error was predicated, nevertheless none of such errors was prejudicial and accordingly no new trial should have been granted for the

reason that it appears from the whole record, first, that the defendants were not negligent and, second, that if there was a question for the jury as to whether or not there was negligence on their part, the finding of the jury evidenced by the verdict returned is that there was no negligence; and, finally, that in any event, regardless of any negligence of the defendants, the plaintiff himself was guilty of contributory negligence which was the proximate cause of the accident and therefore the verdict must stand.

The photograph, Defendants' Exhibit 16, the admission of which in evidence the trial court held to be prejudicial error, was taken three weeks after the night of the aicdent. It purported to show the switch engine in question with its front headlight and the light on the rear of the tender both lighted, taken under similar conditions of drakness and with the surroundings the same as at the time of the accident. It was offered by the defendants toward the close of their case. The plaintiff's objection was that the conditions under which the photograph was taken were not the same as at the time of the accident, in that the photograph was taken on a time exposure by the light of automobile headlights and the flood lights at the oil station; that the engine was not moving but was standing still and so the photograph presented a very different picture from that which the human eye would have observed in the brief time the plaintiff was approaching the crossing immediately before the accident and accordingly its effect would be misleading and exceedingly prejudicial.

The rule with respect to the admission of photographs is a pliable one. Whether or not they shall be admitted is left largely to the discretion and judgment of the trial court. See Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 ND 40, 138 NW 976; Wyldes v. Patterson, 31 ND 282, 153 NW 630. But whether there was error in this respect, and whether there was error in the other respects specified, is not now important. For if, when the plaintiff rested his case in chief, and at the conclusion of the whole case, the facts then presented by the record viewing it in the light most favorable to the plaintiff, showed him to have been guilty of contributory negligence as a matter of law, then the alleged errors on which he grounds his motion for a new trial are immaterial and the verdict as returned must stand. See Cassidy v. Reuter, 63 ND 267, 247 NW 890; Sorg v. Brost, 29 ND 124, 150 NW 455; Browne v. Los Angeles R. Corp. 117 Cal App 559, 4 P(2d)

279; Neal v. Union Transfer, 127 Neb 443, 255 NW 544; Maher v. Wagner, 62 SD 227, 252 NW 647.

Whether a new trial shall be granted rests largely in the sound discretion of the trial court, and an order granting a motion therefor will not be disturbed unless it can be said that there was an abuse of that discretion. Martin v. Parkins, 55 ND 339, 213 NW 574; and cases cited; Blum v. Standard Oil Co. 68 ND 329, 279 NW 764; State v. McEnroe, 68 ND 615, 283 NW 57; and authorities cited in the foregoing cases. But this discretion is a legal discretion to be exercised in the interest of justice, so if it appears on the record that the party making the motion has not made a case and there is no reasonable probability that on a new trial he can make a case, an order granting a new trial will not be sustained. Kohlman v. Hyland, 56 ND 772, 219 NW 228, and authorities cited therein.

Of course it must be borne in mind that the burden of establishing contributory negligence in cases such as the instant one is on the defendant. As to whether there is contributory negligence is ordinarily a matter of fact to be determined by the jury. It is only when the evidence is such that reasonable minds must conclude the plaintiff did not act with due care for his own safety that the question ceases to be one for the jury. Marshall v. Northern P. R. Co. 58 ND 626, 227 NW 55; Billingsley v. McCormick Transfer Co. 58 ND 913, 228 NW 424; Martin v. Parkins, 55 ND 339, 213 NW 574, supra; State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. 54 ND 400, 209 NW 853; and cases cited in the foregoing cases. In the light of these authorities, let us review the record and ascertain whether the facts presented are such that reasonable minds can differ as to whether there was negligence on the part of the plaintiff which contributed to the accident and injury.

The plaintiff's case simmers down to this: He was driving along a highway with which he was well acquainted; he was approaching a railway crossing that he well knew; he had driven over it many times; he knew it was his duty to look and listen, so he looked and listened; he says he heard no bell or whistle and that he was so blinded by the lights of the automobiles coming from the opposite direction he could see only along the north lane of the highway on which he was driving and could His witness Baker testified that the whistle of the engine was blowing not see to the south whence he knew the railroad he was crossing came.

and the light on the rear end of the tender was lighted; there were no automobiles going from the west to the east between the plaintiff and the filling station where Baker was as plaintiff approached the crossing, though there had been cars there a half minute before. All that were coming had stopped for the train. Baker just across the highway from plaintiff at that moment had no difficulty in seeing the train then some 100 or 150 feet southwest from the crossing. There was nothing to obstruct plaintiff's view down the Y as he approached it. (See the photograph, supra.) Plaintiff says that he was driving at 15 to 20 miles an hour. Baker says at not to exceed 25 miles an hour. He saw both the plaintiff and the train but did not anticipate a collision. The only testimony with respect to the speed of the train is that of the witness Koltes that it was "moving slowly." The engine that collided with his car, or with which his car collided, moving at the speed at which it was moving, must have been near the point of collision where plaintiff must have seen it had he loked. He cannot say he looked and did not see when, if he had looked, he should have seen. Williams v. Minneapolis, St. P. & S. Ste. M. R. Co. 57 ND 279, 221 NW 42; Rattie v. Minneapolis, St. P. & S. Ste. M. R Co. 55 ND 686, 215 NW 158; Zeis v. Great Northern R. Co. 61 ND 18, 236 NW 916. As between the train and the plaintiff the train had the right of way. State ex rel. North Dakota Workmen's Comp. Bd. v. Great Northern R. Co. 54 ND 400, 209 NW 853, supra; Zeis v. Great Northern R. Co. supra. If plaintiff had looked and seen, even when the tender was at the edge of the highway, with his car in the condition in which he said it was, with the brakes working as he said they were, he had plenty of time within which to stop and avoid the collision. The conclusion is unescapable that plaintiff either paid no attention to the warning signs and sounds and though he was blinded by the lights heedlessly drove on regardless of possible danger, or that he saw the engine slowly backing up the Y and thought he could beat it over the crossing. In either event, he was negligent, and his negligence was a proximate cause of the accident.

At the conclusion of the whole case the record was even more favorable to the defendants. The plaintiff says he did not see the train. The only one of his witnesses who testified as to the speed at which it was backing up the Y was Koltes. He said it was "moving slowly." The four trainmen who were with the train at the time of the accident testified that it was moving at not to exceed eight miles per hour, and the

defendants' witness Byron testified to the same effect. The trainmen testified that the bell was ringing; that there was an automatic bell ringer on the engine and that it was in operation; they also testified that the whistle was blowing as the engine backed up the Y toward the crossing. Baker, plaintiff's witness, testified that he heard the whistle and noted it especially because it interfered with his conversation with Koltes and drew his attention to the train. Defendants' witness Byron also testified that he heard it and that it called his attention to the train. Likewise the witness Dowling. Against this there is only the negative testimony of plaintiff and his other witnesses that they did not hear either the whistle or the bell.

The enginemen testified that there was a light on the rear of the tender and that it and the headlight on the engine were lighted. So also did Dowling. Plaintiff's witness Baker testified to the same effect. The testimony of plaintiff's other witnesses is simply that they did not know whether or not there were lights there.

The witness Byron had his attention called to the train by its whistle and saw it moving slowly up the Y. He stopped some 50 feet from the track to let it pass. There were no automobiles immediately preceding him and none for some distance behind him. He had stopped and was watching the engine when it crossed the highway. He heard the noise of the collision. He went to where the plaintiff's car was and found that it had collided with the northwest corner of the tender. The defendants' witness Dowling was waiting to go onto the highway some 400 or 500 feet east of the crossing. He and Akeson waited in the latter's car until plaintiff had driven past, then immediately followed him onto the highway. They were about 100 feet behind the plaintiff. Plaintiff seemed to slow down. Dowling heard the whistle. They looked down the Y and saw the train approaching. They were watching the train and did not observe him further. They heard the crash of the collision, stopped, and went forward to where the plaintiff's car was. The car had collided with the northwest corner of the tender. It is true there is a difference in the testimony as to whether the northwest or northeast corner of the tender struck the car. Plaintiff's witnesses saying it was the northeast, and the defendants' the northwest corner. But the photograph in evidence shows that the footboard on the northwest corner of the tender was doubled under the tender, while that on the northeast corner was undamaged. Considering the angle

at which the engine was crossing the highway it is improbable that the northeast corner of the tender could strike the plaintiff's automobile just ahead of the cab. On the other hand, the condition of the tender, the manner in which the tender shoved the car along the track after the collision, and all the circumstances indicate that the engineer's version of the manner in which the collision took place, that is, that the plaintiff swerved to get around the tender, is the correct one.

The photographs in the record clearly show that the highway on both sides of the crossing for some distance is perfectly level and that there was nothing to obstruct a view from points anywhere within 400 feet east of the crossing down along the Y to the southwest.

Considering the whole record we are confirmed in our opinion heretofore expressed that it is impossible to escape the conclusion that plaintiff himself was negligent and that this negligence was a proximate cause of the accident. We are also of the opinion that there is no reasonable probability that any different result could be reached should a new trial be had.

The order appealed from accordingly is reversed.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.