Raymond **BARSNESS**, an Individual, Plaintiff and Appellant,

v.

**GENERAL DIESEL & EQUIPMENT CO., INC.,** a North Dakota Corporation, Defendant, Third-Party Plaintiff and Appellee,

v.

**FIRST ASSEMBLY OF GOD CHURCH** and Northern Improvement Co., Third-Party Defendants and Appellees.

Civ.No. 10918.

Supreme Court of North Dakota.

March 19, 1986.

Aarestad, Briggs & Jones, Fargo, for plaintiff and appellant; argued by Wayne G. Aarestad.

Cahill, Jeffries & Maring, Moorhead, for defendant, third-party plaintiff and appellee General Diesel & Equipment Co., Inc.; argued by David S. Maring.

MESCHKE, Justice.

Raymond Barsness sued General Diesel & Equipment Company [General Diesel] on theories of negligent entrustment and negligent failure to warn for injuries he sustained when the manbasket he was occupying became disengaged from a crane supplied by General Diesel. The trial court held that General Diesel owed no duty to Barsness under either theory. Barsness appeals from the district court summary judgment dismissing his action. We reverse and remand for trial.

In 1980, First Assembly of God Church began construction of a new sanctuary in Fargo. First Assembly hired Arlyn Land, a church member with limited construction experience, to serve as general superintendent of the construction project.

General Diesel sells and leases construction equipment. In August of 1980, and again in August of 1981, General Diesel leased a crane to First Assembly for Land's use at the construction site. Land

also obtained a manbasket from Northern Improvement Company to be attached to the crane to lift men for above-ground work. Land's only previous experience operating a crane involved setting a walk bridge at a golf course, which entailed only ground-level work and did not require lifting workmen in a manbasket.

Barsness was hired as a laborer by First Assembly in 1981. On August 24, 1981, Barsness and another worker were lifted in the manbasket to check spacing between four large arches. Land was operating the crane, and had rigged the manbasket to the crane with a four-foot piece of chain by simply looping the chain through the eye of the manbasket and placing the chain's hook through one of its links. It is undisputed that this was an improper manner of rigging the manbasket to the crane. While suspended approximately thirty-five feet above the ground the chain became disconnected, causing the manbasket to fall to the ground. Barsness was seriously injured.

Barsness commenced this action against General Diesel, alleging negligent entrustment of the crane to an inexperienced operator and negligent failure to warn. General Diesel filed a third-party complaint against First Assembly and Northern Improvement. The trial court granted summary judgment dismissing Barsness's claims against General Diesel, and Barsness appeals.

## I. NEGLIGENT ENTRUSTMENT

■ Barsness contends that the trial court erred in dismissing his action based upon General Diesel's alleged negligent entrustment of the crane to First Assembly

and Land. Barsness relies upon Section 390 of the Restatement (Second) of Torts (1965) to support his argument:

"*§ 390. Chattel for Use by Person Known to be Incompetent.*

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

■ This Court has previously recognized a cause of action for negligent entrustment. *See Rau v. Kirschenman*, 208 N.W.2d 1, 5–7 (N.D.1973); *Posey v. Krogh*, 65 N.D. 490, 497–498, 259 N.W. 757, 760–761 (1934); *see also Aberle v. Karn*, 316 N.W.2d 779, 783 (N.D.1982); *Rodgers v. Freborg*, 240 N.W.2d 63, 65 (N.D.1976); *Froemke v. Hauff*, 147 N.W.2d 390, 404 (N.D.1966). Although these cases involved entrustment of a motor vehicle, we see no reason why the doctrine should not apply to other chattels which, if placed in the hands of an incompetent or inexperienced person, present a likelihood of unreasonable risk of harm to third persons. Thus, Section 390 of the Restatement (Second) of Torts (1965) appropriately summarizes the principle of negligent entrustment as applied in our state.[1]

In this case, the trial court held that misuse of the crane by First Assembly and Land was unforeseeable, so that General Diesel owed no duty to Barsness as a matter of law. The court further held that,

1. Barsness urges us to "adopt" this section of the Restatement. Because the Restatements are carefully studied and precisely stated summaries of basic principles of law, they are particularly useful for study and reference. They are entitled to respect as authoritative and reasoned outlines of the law "as it has developed in the courts." Restatement (Second) of Torts (1965), Introduction at VII. Although we have often relied upon and cited the Restatements as relevant authority, we believe it is inappropriate for a judicial body to "adopt" principles of law as

summarized in the Restatements. While at times the difference may appear semantical, there are important differences between "adopting" a reference and relying upon it as relevant authority in a particular case. We are not a legislative body and we therefore cannot "adopt" any part of the Restatements. Of course, we shall continue to use and cite Restatement references as authoritative and convenient expressions of principles of law where they are appropriate.

even if a duty was owed, as a matter of law Land was not an inexperienced crane operator.[2]

■ As a prerequisite to actionable negligence, a plaintiff is required to establish the existence of a duty on the part of the allegedly negligent person to protect the plaintiff from injury. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 340 (N.D.1983). Whether a duty exists is generally a preliminary question of law for the court. *Holcomb v. Zinke*, 365 N.W.2d 507, 511 (N.D.1985); *Peterson v. City of Golden Valley*, 308 N.W.2d 550, 553 (N.D.1981); *see* § 328B, Restatement (Second) of Torts (1965).

General Diesel contends that summary judgment is appropriate in this case because, as a matter of law, it owed no duty to protect Barsness from the injury which he sustained. General Diesel relies upon *Peterson, supra,* and *Schlenk v. Northwestern Bell Telephone Co.*, 329 N.W.2d 605 (N.D.1983). In *Peterson* and *Schlenk*, parties who had hired subcontractors were sued by employees of the subcontractors for vicarious liability in situations where the work was claimed to involve a "peculiar risk" or "special danger," relying upon principles summarized in Sections 416 and 427, Restatement (Second) of Torts (1965). We upheld summary judgment in each case because the evidence did not show, as a matter of law, that the activities involved a "peculiar risk" or "special danger."

It is important to note, however, that in *Peterson* we specifically distinguished "cases like *Kirton v. Williams Elec. Co-op, Inc.*, 265 N.W.2d 702 (N.D.1978), where factual determinations are prerequisite to establishing duty." *Peterson, supra,* 308 N.W.2d at 553. If the existence of a duty depends upon factual determinations, resolution of such factual disputes is for the trier of fact. *See Layman, supra,* 343

N.W.2d at 341; *Schleicher v. Western State Bank*, 314 N.W.2d 293, 298 (N.D. 1982); *Kirton v. Williams Electric Cooperative, Inc., supra,* 265 N.W.2d at 705. In *Kirton,* we held that whether the defendant could have reasonably foreseen the injury to the plaintiff was a factual determination prerequisite to the finding of a duty. *See also Schleicher, supra,* 314 N.W.2d at 298. The same situation is presented in the instant case—the existence of a duty is contingent upon a jury's determination of foreseeability of the injury to the plaintiff. Thus, *Schlenk* and *Peterson* are distinguishable and summary judgment on this issue was inappropriate. The appropriate procedure under these circumstances is outlined in Comment *e* to Section 328B of the Restatement (Second) of Torts (1965): "Where the existence of a duty will depend upon the existence or non-existence of a fact as to which the jury may reasonably come to either one of two conclusions ... then it becomes the duty of the court to instruct the jury as to the defendant's duty, or absence of duty, if either conclusion as to such fact is drawn."

The trial court, however, determined that, as a matter of law, Land's misuse of the crane was not foreseeable. We have previously held that foreseeability of the plaintiff's injury is a question of fact for the jury, unless the facts are such that reasonable minds could not differ. *Layman, supra,* 343 N.W.2d at 341; *Kirton, supra,* 265 N.W.2d at 705. Whether a particular use or misuse of a product was reasonably foreseeable is also a jury question. *Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530, 535 (N.D.1977); *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 65 (N.D.1974). If, however, the facts are such that reasonable minds could not differ, the court may decide the issue as a matter of law. *Kirton, supra,* 265 N.W.2d

---

**2.** Although the crane was actually leased to First Assembly, all parties apparently contemplated that Land would be responsible for operation of the crane on the job site. We observe that the principle of negligent entrustment applies not only to one who supplies directly but also to one "who supplies ... through a third person a

chattel for the use of another whom the supplier knows or has reason to know to be likely ... to use it in a manner involving unreasonable risk of physical harm to himself and others...." § 390, Restatement (Second) of Torts (1965). Thus, Land's alleged inexperience is relevant to the negligent entrustment claim.

at 705. Presumably, the trial court in this case determined that reasonable minds could not reach differing conclusions from the evidence on foreseeability.·

■ We have often stated that negligence actions ordinarily should not be disposed of by summary judgment. *E.g., VanVleet v. Pfeifle,* 289 N.W.2d 781, 784 (N.D.1980). Even if there is no dispute as to the evidentiary facts, if there is any doubt as to the existence of a genuine issue of material fact, or if differing inferences can be drawn from the undisputed evidence, there is a jury question and summary judgment is improper where questions of negligence are in issue. *Kirton, supra,* 265 N.W.2d at 706; *Johnson v. American Motors Corp., supra,* 225 N.W.2d at 58. Where there exists the "slightest doubt" as to a factual dispute or "genuine issue of fact," summary judgment should be denied in a negligence action. *Kirton, supra,* 265 N.W.2d at 706.

Upon a thorough review of the record, we conclude that the trial court erred when it found that the evidence was such that reasonable minds could draw only one conclusion on the issue of foreseeability. There was sufficient evidence presented from which one could draw an inference that it was foreseeable that Land, with his limited experience with cranes,[3] might improperly rig the crane and thereby ·injure some third party. It is not necessary that the defendant foresee the exact or particular injury or the exact or particular manner in which it may occur. *Kirton, supra,* 265 N.W.2d at 705; *see Moum v. Maercklein,* 201 N.W.2d 399, 402–403 (N.D.1972). Thus, in this case, it was not necessary that General Diesel foresee specifically that Land would use a chain to rig a manbasket to the crane and that the manbasket would fall, injuring the occupants. It is sufficient if the injury was of a type which might have been foreseen and Barsness belonged to the class of people who might be injured

thereby. We conclude that a jury could draw different inferences on the foreseeability of the misuse of the crane and the resulting injury to Barsness. Because a genuine material fact is in dispute which is prerequisite to a finding of duty, the trial court erred in granting summary judgment to General Diesel based upon its conclusion that no duty was owed to Barsness.

■ General Diesel further contends that, even if it owed a duty to Barsness, summary judgment on the negligent entrustment issue was appropriate because the trial court concluded that, as a matter of law, Land was not inexperienced in crane operation. Thus, General Diesel contends, it cannot be held liable for negligent entrustment of the crane to Land.

General Diesel argues that the "undisputed facts" establish that General Diesel had no reason to know of Land's alleged inexperience. Primarily, these "undisputed facts" consist of: 1) Land's assertions that he felt qualified to operate the crane; 2) General Diesel's knowledge that Land had operated cranes without incident on two prior occasions; and, 3) a provision in the lease agreement requiring that the crane be operated only by an experienced operator. We believe, however, that differing inferences can be drawn from these "undisputed facts." For example, the record indicates that it was not General Diesel's customary practice to include a statement in the lease warning that only experienced operators were to use the crane. An inference could be drawn from this evidence that General Diesel was concerned about the qualifications of the operator in this case. Furthermore, the fact that Land had on two prior occasions operated cranes does not conclusively establish that he was an experienced crane operator.[4] Barsness presented expert testimony by deposition to establish that Land was in fact not an experienced crane operator, and that his

---

3. As will be discussed *infra,* Land's experience or inexperience with cranes is a question for the jury.

4. Certainly the mere fact that an inexperienced operator has used the chattel a few times before without incident cannot be an absolute defense, as a matter of law, against a claim of negligent entrustment.

knowledge of cranes "didn't appear to be that much."

We have thoroughly reviewed the record and we conclude that the evidence and the inferences to be drawn therefrom are not such that reasonable minds could draw only one conclusion on the issue of Land's experience and General Diesel's knowledge thereof. We conclude that genuine issues of material fact exist, and that Land's inexperience, and whether General Diesel knew or should have known of his inexperience, are fact questions for the jury. It is for the jury to determine whether it was negligence for General Diesel to lease the crane to First Assembly for Land's use based upon the circumstances presented. The trial court erred in concluding that as a matter of law Land was not an inexperienced operator.

We have reviewed the remaining authorities cited by General Diesel on this issue and the other reasons given by the trial court in support of its decision and find them to be either duplicative or unpersuasive. The trial court erred in granting summary judgment on the negligent entrustment issue.

## II. DUTY TO WARN

■ Barsness contends that the trial court also erred in dismissing his action based upon negligent failure to warn, relying upon the principle set out in Section 388, Restatement (Second) of Torts (1965):

"§ 388. Chattel Known to be Dangerous for Intended Use.

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the

chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

■ We have previously recognized a cause of action for negligent failure to warn. See Mauch v. Manufacturers Sales & Service, Inc., 345 N.W.2d 338, 346 (N.D. 1984); Seibel v. Symons Corp., 221 N.W.2d 50, 54–58 (N.D.1974). We have also previously cited Section 388 and the comments thereto. See Olson v. A. W. Chesterton Co., supra, 256 N.W.2d at 540; Seibel v. Symons Corp., supra, 221 N.W.2d at 55–57. Although these cases involved manufacturers of products, we see no reason to limit application of the doctrine to manufacturers only. We believe that other suppliers of chattels should be held liable for their negligent failure to warn of dangerous propensities of a chattel supplied to another, as outlined in Section 388.[5]

The trial court held, and General Diesel contends on appeal, that no duty was owed to Barsness because of our holdings in Peterson v. City of Golden Valley, supra, and Schlenk v. Northwestern Bell Telephone Co., supra. As we have previously discussed, the rationale of Peterson and Schlenk does not apply if existence of a duty depends upon the resolution of factual disputes. We conclude that, as in Kirton, supra, the existence of a duty to warn in

---

5. Lest we be accused of effecting a great change in negligence law, we point out that the principle outlined in Section 388 is really nothing more than a restatement of basic negligence principles placed within the context of failure to warn by suppliers of chattels. Every person has a duty to act reasonably to protect others from harm. Section 388 merely expresses guidelines for determining the extent of that duty and the reasonable conduct expected of a supplier of a chattel which is likely to be dangerous for the use for which it was supplied. Rather than establishing a new cause of action, our holding in this case merely clarifies existing negligence principles when applied to the special circumstances presented.

this case is contingent upon factual determinations which must be left to the jury.

Existence of a duty to warn in this case depends upon a determination of whether General Diesel knew or had reason to know that the crane was or was likely to be dangerous for the use for which it was supplied. *See* § 388(a), Restatement (Second) of Torts (1965). In essence, three factual issues are involved: (1) For what use was the crane supplied? (2) Was the crane dangerous or likely to be dangerous for that use? (3) Did General Diesel know or have reason to know of such danger? Subsection (b) of Section 388 identifies another prerequisite factual determination before a duty to warn arises: Did General Diesel have no reason to believe that those who would use the crane would realize its dangerous condition? Only by resolving these factual issues can the existence of a duty to warn in this case be determined. The trial court erred in granting summary judgment dismissing Barsness's claim for lack of a duty.

The trial court in this case further concluded that, as a matter of law, General Diesel had no reason to know that First Assembly and Land would use a manbasket with the crane and that "General Diesel could believe under these circumstances that First Assembly would realize the danger of substituting tools." We have thoroughly reviewed the record and we conclude that reasonable minds could reach differing conclusions on these factual determinations. We therefore conclude that summary judgment was inappropriate.

General Diesel also contends that it warned of the dangers involved when lifting people with cranes, thereby discharging its duty to warn. The warning given by General Diesel was contained in the operator's manual supplied with the crane:

"6. Many people have been injured when riding crane hooks or loads or while being lifted in manbaskets. They have no control over how they are handled and no protection from impacts or falls. Small mistakes can be fatal.

"Do not lift people with cranes. Use ladders, scaffolds, elevating work platforms or other equipment designed to lift people, but do not use cranes."

We have previously discussed adequacy of a warning in *Seibel, supra,* where we quoted at length from Comment *n* to Section 388. Adequacy of the warning is ultimately a fact question. *See Stillwell v. Cincinnati Inc.,* 336 N.W.2d 618, 623–624 (N.D.1983); *Seibel, supra,* 221 N.W.2d at 54–57.

While the warning given in the operator's manual is obviously evidence favorable to General Diesel, we cannot conclude that reasonable men could not differ as to its adequacy under the facts presented in this case. Therefore, we cannot hold that it was adequate as a matter of law. Adequacy of the warning given should be left for determination by the jury at trial.

We have reviewed the remaining authorities cited by General Diesel and the other reasons given by the trial court in support of its decision and find them to be either duplicative or unpersuasive. We conclude that the trial court erred in granting summary judgment on the negligent failure to warn issue.

### III. CAUSATION

General Diesel urged at oral argument that the trial court's summary judgment may be sustained because Land's negligent rigging of the manbasket to the crane was a superseding cause. Generally, the determination of whether a subsequent act constitutes a superseding cause, thereby absolving a defendant from liability for his prior act, is a question of fact for the jury. *Wolff v. Light,* 156 N.W.2d 175, 181–182 (N.D.1968); *see also Andrade v. Ellefson,* 375 N.W.2d 828, 839 (Minn.Ct.App. 1985). If the evidence and inferences to be drawn therefrom are such that reasonable minds could reach differing conclusions on the issue of superseding cause, summary judgment is inappropriate. *See Andrade, supra,* 375 N.W.2d at 839. We conclude that in this case the question of superseding cause is for the jury.

The summary judgment dismissing Barsness's action against General Diesel is reversed. The cause is remanded for trial on the merits.

ERICKSTAD, C.J., GIERKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.