No. 95-3700

RODNEY KIEMELE; LILLIAN KIEMELE,*
                                 *
     Plaintiffs - Appellants     *
                                 *  Appeal from the United States
     vs.                         *  District Court for the
                                 *  District of North Dakota.
SOO LINE RAILROAD COMPANY,       *
                                 *
     Defendant - Appellee        *

                   Submitted:  June 10, 1996

                     Filed:  August 20, 1996

Before BEAM and HEANEY, Circuit Judges, and BOGUE,* Senior
District Judge.

BOGUE, Senior District Judge.

     Rodney and Lillian Kiemele appeal the district court's summary
judgment dismissal of their negligence action.  Because we find
that genuine issues of material fact exist, we reverse and remand.

_____

     *The HONORABLE ANDREW W. BOGUE, Senior United States
     District Judge for the Western Division of the District
     of South Dakota, sitting by designation.

# I.  BACKGROUND

On December 2, 1993, Rodney Kiemele (Kiemele) was driving himself and three co-employees to work at an oil rig outside of Portal, North Dakota.  The road on which Kiemele was traveling was covered with compacted snow and ice, and heavy fog limited visibility.  At approximately 7 p.m., Kiemele ran his automobile into the 112th car of a train owned and operated by Soo Line Railroad Company (Soo Line).  The train was stopped on Department of Transportation Crossing No. 699031G, also known as "Swenson's Crossing."  The crossing was marked with an advance warning sign and crossbucks.  Kiemele suffered injuries as a result of this collision.

The Kiemeles brought this diversity action against Soo Line alleging that Soo Line was negligent in its operation of the train, in its maintenance and operation of the crossing, and in its failure to improve and upgrade the crossing.  The district court granted Soo Line's motion for summary judgment.  The district court found that no material facts were in dispute, that Soo Line demonstrated it "had no duty to have performed the various tasks which the plaintiff alleges should have been done," and that the application of N.D.C.C. § 39-09-01 required dismissal.  The Kiemeles appeal this order.  Having carefully reviewed the record and the arguments of the parties, we conclude that the district court erred in its dismissal of the Kiemeles' action.

# II.  DISCUSSION

## A.   Standard of review

We review de novo a district court's grant of summary judgment. United States v. Green Acres Enter., Inc., 86 F.3d 130, 133 (8th Cir. 1996). Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he or she can "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458, 488 (1962). In determining whether summary judgment is appropriate, the facts and inferences are viewed in the light most favorable to the nonmoving party. The burden is placed on the moving party to establish both that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538 (1986).

The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," Matsushita, 106 S. Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. We review the district court's grant of summary judgment de novo. Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 795 (8th Cir. 1996); Landreth v. First Nat'l Bank of Cleburne County, 45 F.3d 267, 268 (8th Cir. 1995).

The issues of negligence, proximate cause, and contributory negligence are generally questions of fact for the trier of fact. Steckler v. Miller & Holmes, Inc., 303 N.W.2d 560, 563 (N.D. 1981); Schalesky v. Soo Line R.R., 180 N.W.2d 236, 239 (N.D. 1970). These issues only become questions of law when only one conclusion could be drawn from the record in the case. Id. The pending case involves factual disputes concerning whether Soo Line breached any duty it owed to the Kiemeles and whether Rodney Kiemele was

-3-

contributorily negligent. Because the record in this case could lead a rational trier of fact to find for the Kiemeles, summary judgment was inappropriate.

**B.    Breach of duty**

The law of the state of North Dakota governs this diversity negligence action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). According to the Supreme Court of North Dakota,

> Actionable negligence consists of a duty on the part of the allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty. If no duty exists on the part of the alleged tortfeasor, there is no actionable negligence.

Deigel v. City of West Fargo, 546 N.W.2d 367, 370 (N.D. 1996).

Under North Dakota law, the existence of a duty is a preliminary question of law for the court. Bulman v. Hulstrand Constr. Co., 521 N.W.2d 632, 640 (N.D. 1994). If, however, the existence of a duty is contingent on fact issues, these issues must be resolved by the trier of fact. Barsness v. Gen. Diesel & Equip. Co., 383 N.W.2d 840, 843 (N.D. 1986). In this case, Soo Line owed Rodney Kiemele the general duty to exercise reasonable care under the circumstances. See Tom Beuchler Constr., Inc. v. City of Williston, 392 N.W.2d 403, 405 (N.D. 1986); N.D.C.C. § 9-10-06. "Reasonable care under the circumstances necessarily includes any specialized knowledge, facts, or skill on the part of one charged with a duty." Id.

-4-

The district court found that Soo Line did not breach any duty it owed to the Kiemeles.  The Kiemeles assert that a question of fact exists as to whether or not Soo Line breached the duty it owed Rodney Kiemele by blocking the crossing, by improperly maintaining the crossing signs, by failing to take further precautions to warn of the train once it did block the crossing, and by failing to construct or alter the crossing so that it was safe for the traveling public.  Generally, whether or not Soo Line's actions or inactions constituted a breach of its duty would be a question of fact.

The Kiemeles first assert that Soo Line's act of blocking the crossing constituted a breach of duty.[1]  Fact issues exist as to

---

[1] The parties engaged in some discourse regarding the application of N.D.C.C. § 49-11-19 to this claim.  Section 49-11-19 provides as follows:

No person shall operate any train in such a manner as to prevent vehicular use of any roadway for a period of time in excess of ten consecutive minutes except:

1. When necessary to comply with safety signals affecting the safety of the movement of trains;
2. When necessary to avoid striking any object or person on the track;
3. When the train is disabled, by accident or otherwise;
4. When the train is in motion except when engaged in switching operations;
5. When there is no vehicular traffic waiting to use the crossing; or
6. When necessary to comply with a government statute or regulation. ...

We find that this statute is irrelevant to the determination of negligence in this case.  However, regardless of whether or not N.D.C.C. § 49-11-19 was violated, the length of time that the train blocked the crossing before the accident occurred may be relevant to breach of duty issues.

when the employees of Soo Line knew they would have to stop the train.  These would bear on the issue of whether or not Soo Line's employees could have stopped the train at some other point on the tracks so that it would not have blocked Swenson's Crossing.  There is also an issue as to how long the train had been stopped before the collision.  This may be relevant to determining whether or not Soo Line's failure to separate the train at the crossing was reasonable.

The Kiemeles next assert that Soo Line breached its duty by failing to maintain the crossbucks at the crossing.  Pursuant to N.D.C.C. § 24-09-03, Soo Line has a duty to erect and maintain crossbucks at the crossing.  Whether or not Soo Line did in fact maintain the crossbucks at Swenson's Crossing is at issue.  The Kiemeles contend that the crossbucks at Swenson's Crossing had lost their reflectivity.

The crossing where the accident occurred was designated by advance warning signs and crossbucks.  Soo Line contends that these signs were sufficient warning of the crossing regardless of the existing conditions.  Section 24-09-01.1 of N.D.C.C. states that advance warning signs and crossbucks "must be deemed adequate and appropriate for warning of the existence and nature of each railroad crossing for all purposes whatsoever."  On its face, this statute would seem to preclude the Kiemeles' claim that failure to provide further warning constituted a breach of duty.   In this case, however, there is a fact issue as to whether or not these signs had lost their reflectivity.[2]  If the signs were not apparent

_____

[2] The North Dakota Supreme Court has held that similar evidence regarding a railroad's failure to maintain the reflectorized material on warning signs was properly admissible. South v. Nat'l R.R. Passenger Corp. (AMTRAK), 290 N.W.2d 819, 840-41 (N.D. 1980).

to travelers due to their improper maintenance and if Soo Line knew or should have known of this fact, then N.D.C.C. § 24-09-01.1 would be inapplicable. Thus, genuine issues of material fact exist as to this issue.

Soo Line further asserts that any claim regarding the sufficiency of warning of the crossing is preempted by federal law because federal funds were used to upgrade Swenson's Crossing in 1981. In addressing a similar preemption issue, the Court in Elrod v. Burlington Northern Railroad Co., held that: "[A] railroad's common-law duty of care continues until the federally prescribed devices are actually installed and operating." 68 F.3d 241, 244 (8th Cir. 1995). After federally funded warning devices are installed and operating, federal preemption occurs. Id. In this case, there is a fact issue as to whether or not the crossbucks were "operating." If they had lost their reflectivity, they were not operating, and Soo Line is not entitled to the benefit of federal preemption.

The Kiemeles assert that Soo Line breached its duty of due care by failing to construct or alter the crossing so that it was safe. In 1977, Soo Line added ballast to the Swenson Crossing sight. In 1980, Soo Line laid a new rail over the crossing. The

Kiemeles argue that pursuant to N.D.C.C. §§ 49-11-04,[3] 49-11-05,[4] and 49-11-06,[5] Soo Line had a duty to adjust and restore the crossing and highway approaches after it altered the crossing in 1977 and 1980.  We find that the record as a whole could not allow a rational trier of fact to conclude that Soo Line breached any duty regarding the construction or alteration of Swenson's Crossing.

---

[3] Section 49-11-04 of N.D.C.C. provides as follows:

Every corporation constructing, owning, or using a railroad shall restore every stream of water, watercourse, street, highway, or canal across, along, or upon which such railroad may be constructed, to its former state or to such condition that its usefulness shall not be materially impaired, and thereafter shall maintain the same in such condition against any effects in any manner produced by such railroad.

[4] According to the Kiemeles, from 1943 to 1979, N.D.C.C. § 49-11-05 provided: "All railroad corporations operating a line of railway in this state shall build or cause to be built and kept in repair, safe and sufficient crossings over such line at all points where it shall intersect any public highway in use." Between 1979 and 1993, section 49-11-05 provided that this duty shall be performed in accordance with N.D.C.C. § 49-11-06.  In 1993, section 49-11-05 was repealed; thus, there is some issue as to whether or not it applies in this case.

[5] Section 49-11-6(1) of N.D.C.C. provides that "A public highway-railroad crossing at grade shall be constructed of a grade of earth on one or both sides of the railroad track, as the location may require, . . . and such grade shall be of such slope as shall be necessary for the safety and convenience of the traveling public."

Section 49-11-6(3) of N.D.C.C. provides that "At such time as tracks through a railroad crossing are raised or otherwise altered by the railroad, the railroad shall, unless otherwise ordered by the commission, adjust and restore the crossing and the highway approaches, surfaces, and grades as shall be necessary for the safety and convenience of the traveling public. . . ."

In order to allege a breach of this duty, the Kiemeles would have to establish the condition of the crossing and the approach before any work was performed by Soo Line, the fact that the crossing was actually raised or altered, and if the crossing had been raised or altered, the fact that the work was performed by Soo Line. The Kiemeles rely on the deposition testimony of Soo Line's Public Works Engineer, Chuck Anderson, to establish that when the ballast was added to the crossing it is "probable" that the crossing was modified. Not only did Mr. Anderson lack definite knowledge as to whether or not the approaches to the crossing were modified in 1977, but he also testified he did not know who performed the modifications. The modifications, if they occurred, could have been performed by either Soo Line or the highway authority. This evidence is too tenuous for a reasonable jury to find that Soo Line breached any duty it owed in constructing or altering the approaches and crossing.

C.   Contributory negligence

The district court found as a matter of law that Rodney Kiemele was contributorily negligent. Contributory negligence is normally a question of fact for the jury. Steckler, 303 N.W.2d at 563; Schalesky, 180 N.W.2d at 239. In North Dakota a plaintiff's contributory negligence will bar recovery only if his or her negligence was as great as the combined negligence of all of the other individuals who contributed to the injury. N.D.C.C. § 32-03.2-02. The apportionment of fault between a plaintiff and a defendant is generally an issue for the trier of fact. Champagne v. United States, 513 N.W.2d 75, 79 (N.D. 1994).

The district court found that Rodney Kiemele violated N.D.C.C. § 39-09-01. Section 39-09-01 provides as follows:

-9-

> No person may drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing. ...

Soo Line agrees with this determination. It contends that as a result of the decreased visibility and compacted snow and ice on the road, Kiemele was traveling at an excessive speed. Soo Line contends that Kiemele's negligence in failing to reduce his speed was the sole cause of his injuries or at least that his fault was greater than fifty percent.

It also appears that the district court found Kiemele failed to operate his vehicle in a manner which would enable him to stop within the "assured clear distance ahead." Under North Dakota law, a driver has a duty to proceed at a rate of speed which will enable him or her to stop within the assured clear distance ahead. See Wisnewski v. Oster, 110 N.W.2d 283, 288 (N.D. 1961); Doll v. Treiber, 76 N.W.2d 910, 914 (N.D. 1956).

In order to find a violation of either the assured clear distance rule or N.D.C.C. § 39-09-01, one must determine that the driver was proceeding too fast. Before determining whether or not Rodney Kiemele was driving at an appropriate speed for the conditions, several factual issues must be resolved. For example, there is a genuine issue of material fact as to Kiemele's rate of speed when he struck the train. Kiemele testified that before the accident he was traveling between 35 and 40 miles per hour. Kiemele's expert determined he was traveling between 30 and 35 miles per hour. One of Kiemele's passengers believed he was traveling between 40 and 45 miles per hour. There are also genuine issues of material fact as to the conditions which existed the night of the accident. These issues involve the extent Kiemele's

-10-

vision was obstructed by the fog and the extent the road conditions affected Kiemele's driving and stopping ability. Whether or not Kiemele should have been expecting the crossing is also a fact issue which must be resolved. Kiemele testified that the night of the accident he knew he would be crossing railroad tracks. He stated, however, that he thought the tracks were 3½ miles from the turn onto the road where the accident occurred. The tracks were actually a little over 2 miles from the turn.

Soo Line also asserts that Rodney Kiemele violated N.D.C.C. § 39-09-02(1)(a). Section 30-09-02(1)(a) provides that when a driver's view is obstructed, it is presumably lawful for the driver to travel at 20 miles an hour when approaching within fifty feet of a railroad crossing. Section 39-09-02(1)(a) presupposes the fact that the driver knew he or she was approaching a railroad crossing. This statute would not be applicable in cases where the driver did not see or have notice of the impending crossing. There is a genuine issue of material fact as to whether or not Kiemele saw or had notice of the crossing.

Even if N.D.C.C. §§ 39-09-01 or 39-09-02(1)(a) did apply in this case, in North Dakota, violation of a highway safety statute is only evidence of negligence. Keyes v. Amundson, 391 N.W.2d 602, 608 (N.D. 1986). A violation of a statute is not negligence per se. Haider v. Finken, 239 N.W.2d 508, 516 (N.D. 1976).

Soo Line also argues that Kiemele was contributorily negligent because the train had the right of way. Generally, trains do have the right of way. Schnell v. N. Pac. Ry. Co., 1 N.W.2d 56, 63 (N.D. 1941). There is some question, however, as to whether or not the train would still have the right of way when it is parked on a crossing as opposed to moving or being temporarily stopped on a crossing for only a moment. Nevertheless, "[r]ailroads cannot,

-11-

because they have the right of way, disregard reasonable precautions for the safety of the public. They cannot say that the public shall cross their tracks at its peril." Schalesky, 180 N.W.2d at 240.

## III.  CONCLUSION

There is a genuine issue of material fact as to whether Rodney Kiemele was contributorily negligent. There are also genuine issues of material fact precluding summary judgment relative to whether Soo Line breached duties it owed the Kiemeles by blocking the crossing, whether Soo Line improperly maintained the crossing signs, and whether Soo Line improperly failed to take further precautions to warn of the train once it did block the crossing. These issues must be resolved by a trier of fact. Accordingly, the judgment of the district court is reversed and remanded.

BEAM, Circuit Judge, dissenting.

There can be no breach of duty by the Soo Line unless there is a duty owed. And, the court correctly finds that "[u]nder North Dakota law, the existence of a duty is a preliminary question of law for the court." Supra p. 4 (citing Bulman v. Hulstrand Constr. Co. Inc., 521 N.W.2d 632, 640 (N.D. 1994). Without concerning itself with whether the district court appropriately and correctly performed this initial function, the court ventures into a tangled web of perceived disputes of fact, none of which are material to the outcome of this litigation, and holds that summary judgment was improper. From this result, I dissent.

Any duty owed by the Soo Line to the Kiemeles must be considered under two lines of inquiry. First, we must analyze the duty owed, if any, with regard to the actual operation of the

-12-

train.  Second, we must determine the Railroad's responsibility for the maintenance, operation and upgrade of the crossing at which the accident occurred.  Unless and until the court establishes the nature and character of the duty owed, its "Breach of duty" discussion (<u>supra</u> pp. 4-9) is irrelevant and unnecessary.

Here, the issue of train operation is really a matter of non-operation.  The train was stopped.  It was at rest across U.S. Department of Transportation Crossing No. 699031G, and this designation is of some importance as I will discuss later.  While the train was in this position, Rodney Kiemele drove his automobile into the side of car 112.  Even though Kiemele was clearly guilty of contributory negligence as a matter of law under the undisputed material facts of this case, we need not reach that issue to affirm the district court.

Neither the court nor the Kiemeles point to any duty supported by statute, common-law principles or case law that required the Soo Line to avoid stopping the train at a grade crossing.  Moreover, there was no duty to break the train apart in order to avoid blocking this or any other crossing in the vicinity, at least as far as the claims asserted by the Kiemeles are concerned.

The Kiemeles' attempt to create a duty by showing a violation of N.D.C.C. § 49-11-19, a statute that is North Dakota's version of the well-established "ten-minute rule."  As correctly recognized by the court, this statute is irrelevant in this situation, <u>supra</u> note 1, because the statute's purpose is to facilitate traffic flow, not to prevent an automobile from running into the side of a train, moving or stopped.  The court, after reaching the right legal conclusion, then, curiously, finds some relevance in the evidence of the stop to a purported analysis of whether it might have been "reasonable" for the railroad to "separate the train" at the

-13-

crossing. <u>Supra</u> p. 6. Unless there was a duty on the part of the Railroad to "separate the train" in these circumstances, which was not established, the reasonability of any length of stopping time is of no real consequence.

Perhaps the most problematic approach by the court is its application of preempted North Dakota statutes to question the adequacy of the warning, including adequacy of reflectivity, imparted by the devices in place at crossing No. 699031G. First, as a policy consideration, in most instances, the railroad lines have been in place well before motor cars were in widespread use. The advent of increased motor vehicle traffic over existing trackage brought about safety concerns at grade crossings. Congress, in recognition of an equitable division of responsibility for these safety problems, adopted federal legislation which, under certain circumstances, extinguishes state law duties inherent in railroad/motor vehicle grade crossings. 23 C.F.R. § 646.214(b)(3) & (4) (1995). These rules were promulgated by the Federal Highway Administration (FHWA) under the Federal Railway Safety Act of 1970 and the Highway Safety Act of 1973. <u>See</u> <u>Elrod v. Burlington N. R.R. Co.</u>, 68 F.3d 241, 242 (8th Cir. 1995). Where, as here, federally approved designs are implemented with federal money, federal preemption occurs.

There is no dispute, as shown by the Department of Transportation designation at this crossing, that the adequacy and design of the warning devices at crossing 699031G, were approved by the FHWA. Likewise, there is no material factual dispute that the approved warning devices were installed and operating through federal funding as contemplated by federal law. Thus, as indicated, when these federal regulations apply, as they do here, "`state tort law is pre-empted.'" <u>Id.</u> at 244 (quoting <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 670 (1993)). Accordingly, the

-14-

court's use of N.D.C.C. § 24-09-03 to erect a factual reflectivity issue, in the face of the use of federally approved and implemented warning devices, violates federal preemption law. In short, there is no duty owed by the Soo Line to the Kiemeles under the undisputed material facts of this action.

There are no substantial differences between the circumstances of this case and those the court dealt with in Elrod. Any material factual disputes discerned by the court in this case are illusory. The district court was correct. Any other ruling violates the preexisting precedents of this court as established by Elrod. See also St. Louis S.W. Ry. Co. v. Malone Freight Lines, Inc., 39 F.2d 864 (8th Cir. 1994), cert. denied, 115 U.S. 1963 (1995). I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-